## Isaac Scaggs *vs.* Baltimore and Washington Rail Road Company.

By the act of 1837, ch. 309, rail road companies are made responsible for injuries to woods and fields occasioned by fire from their engines, and by the act of 1838, ch. 244, the same remedy is applied to injuries to "any stock as cattle, horses, sheep, hogs, *et cetera.*" The act of 1841, ch. 266, a supplement to both the previous acts, applies all the remedies given by either "to *every description of property* and estate, whether *real or personal.*" The act of 1846, ch. 346, which is a supplement to that of 1838, *only,* and does *not refer*, in any manner, to those of 1841 or 1837, provides, "that the owner of any horse, cow, mule, hog or sheep, *et cetera,* killed or injured by the engines or cars," shall recover full damages "for such killing or injury," and that "it shall not be competent for" the company, "in any trial *had in pursuance of this act,* to adduce the evidence" of the conductor, agent or other person conducting the cars which may do the injury, or that of any agent or employee who may be responsible to the company for negligence, "by which any *stock* may be killed or injured as contemplated by this act." Held:

Scaggs *vs.* Balto. & Wash. Rail Road Co.

That the new *rule of evidence* prescribed by the act of 1846, does not apply to cases of killing or injuring *negro slaves*, it not being the *design* of the Legislature to include such property in the terms *"stock"* and *"et cetera"* as used in that act; this act is confined to the *particular description of property* mentioned in it.

In construing statutes the words of the act are first to be resorted to, and if these are plain in their import they ought to be followed.

General words are sometimes used by way of *example*, and by construction lesser cases are included, but the words used are sometimes *restrictive* and *exclude things not mentioned*, and such is the construction of the words in the act of 1846, ch. 346.

In order to extend a statute by equitable construction beyond its letter, it must be *collected from the act* that the wrong sought to be redressed was one of the considerations for passing the act, otherwise it is a *casus omissus* which a court of law cannot supply.

Where an act denies to one class of suitors a remedy or defence which others enjoy, it will not be extended by equitable construction to cases not specified in it, unless the court is *satisfied* the case is within the *mischief* or *occasion* that was in the minds of the Legislature at the time of its passage.

A release under the corporate seal and purporting to be signed by the president of a corporation, and exhibited *by them* in court as *their act*, would be binding upon the company in any suit against the parties to whom it was given; they would not be heard to dispute its *validity*.

A release "from all claim" which the company "may have" against the parties to whom it was given, "growing in any manner out of an accident whereby the negro slave of the" plaintiff "was killed," and about which the suit was pending, is in proper *form* and renders the parties released competent witnesses.

An agreement that the evidence of a witness should be taken as set forth in the affidavit *"as if he was present,"* gives to his statements the same effect as if offered *orally*, and any thing which could then have been objected to is equally inadmissible when presented as part of the affidavit.

A statement in such an affidavit that "in the *opinion* of the witness the slave's life might have been saved had the defendant's agents used reasonable, ordinary diligence, is inadmissible, being merely the witness' *opinions*.

APPEAL from the Circuit Court for Prince Georges county.

*Trespass on the case,* brought by the appellant against the appellee, to recover the value of a negro slave killed by the defendant's cars, through the alleged negligence, mismanagement and carelessness of its agent, the conductor. Plea, *non cul.*

*1st Exception.* The plaintiff proved the killing, and the

defendant, to prove that the accident was not the consequence of its negligence or that of its agents, offered to prove by Owen Humphreys, the conductor of the train, William Gallaway, the engineer, and Benjamin Dove, the brakesman, all in the employ of the company at the time, that all care, precaution and diligence was used to avoid the collision, and that it was not the result of carelessness or negligence, having first exhibited and filed the following release, purporting to be signed by the president of the company and attested by its corporate seal:

"Know all men by these presents, that the Baltimore & Ohio Rail Road Company have released, and by these presents do release," the parties above named "from all claim which the said company may have against them, or any of them, growing in any manner out of an accident whereby the negro slave of Isaac Scaggs was killed by the train in their charge," &c.

The plaintiff objected to the competency of these witnesses, since the act of 1846, ch. 326, and the efficiency of the release to render them competent, but the court, (CRAIN, J.,) overruled the objection, and permitted the witnesses to give the proposed testimony, and to this ruling the plaintiff excepted.

*2nd Exception.* It was then agreed that the testimony of Benson, a material witness named in the affidavit of the plaintiff, "shall be taken as set forth in the said affidavit *as if he was now present.*" In this affidavit the plaintiff swore that he expected to prove by said Benson that he was a passenger in the cars at the time of the killing, which occurred at a road crossing the rail road on the plaintiff's farm; that the slave might have been seen about three-fourths of a mile by the engineer of the cars, by the use of common, ordinary diligence; that no attempt was made to stop the speed of the cars; that no whistle was blown within three-fourths of a mile before the crossing to forewarn persons to leave the track; and that in the opinion of the witness the slave's life might have been saved had the defendant's agents used reasonable, ordinary diligence. The defendant then prayed the court to instruct the jury, that the opinion of the witness, Benson, named in this affidavit, was no evidence to the jury, and that the jury

should disregard this opinion in the formation of their verdict, which instruction the court gave. To this ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*John M. S. Causin* for the appellant, argued:

1st. That the 2nd sec. of the act of 1846, ch. 346, which makes the conductors, engineers and other employees of the company incompetent to testify in such a case as the present, is a *constitutional* exercise of legislative power. The only restrictions upon the exercise of legislative power, so far as the *States* are concerned, are the *prohibitions* contained in the State constitutions. If any act of Assembly be in its nature and essence a *law*, and not the exercise of *judicial* or *executive* functions, and if it be not in violation of the Federal constitution, and is not *prohibited* by the State constitution, there is no power in the courts to declare it *unconstitutional*. To say that a law not thus prohibited is void, because it violates the spirit of our institutions or impairs any of those rights which it is the object of a free government to protect, and to declare it unconstitutional if it be wrong and unjust, would be assuming a right to change the *constitution*, to supply what judges might conceive to be its defects, to fill up every *casus omissus*, and to interpolate into it whatever, in the opinion of the judges, ought to have been put there by its framers. 21 *Penn. State Rep.*, 161, *Sharpless vs. Mayor of Philadelphia.* 10 *Watts*, 66, *Harvey vs. Thomas.* 6 *Cranch.*, 87, *Fletcher vs. Peck.* 3 *Dallas*, 386, *Calder vs. Bull.* 7 *Gill*, 325, *Day vs. The State.* 1 *H. & J.*, 246, *Whittington vs. Polk.* 3 *H. & McH.*, 554, *Campbell vs. Morris.* 1 *G. & J.*, 463, *Crane vs. Meginnis.* 1 *Baldwin's C. C. Rep.*, 74, *Bennet vs. Boggs.* 9 *Gill*, 305, *Baugher vs. Nelson.* 3 *H. & J.*, 323, *Partridge vs. Dorsey.* 1 *Kent's Com.*, 448, 450. 9 *G. & J.*, 365, *Regents, &c., vs. Williams.* 2 *Md. Rep.*, 452, *Wright vs. Wright.* The entire scope of evidence is pecu-

liarly within the province of the legislative power. *Declaration of Rights*, articles 3 & 20. 7 *Md. Rep.*, 86, *Gibbs vs. Gale, et al. Dunlop's Statutes,* 955. *Acts of* 1838, *ch.* 191, *secs.* 12, 13, and *ch.* 244. 7 *Md. Rep.*, 427, *Broadbent vs. The State.* 3 *How.*, 206, 207, *Taylor vs. The United States.* It is not true that this act of 1846 tends to render the parties excluded as witnesses, *infamous*. The act legislates against a *class* not *individuals*. Infidels are excluded from testifying by the common law. The constitution prescribes *tests*. *Parties* are excluded. *Interest* disqualifies, and there are other interests besides *pecuniary* ones equally liable to affect the truth of evidence, as the relation of husband and wife, &c.

2nd. That being designed for *public protection*, every fair construction to give the act efficacy should be applied by the courts. 2 *H. & J.*, 167, *Beall vs. Harwood.* 4 *G. & J.*, 1, *Canal Co. vs. Rail Road Co.* It is urged on the other side that this act does not apply to negro slaves. But the act of 1838, ch. 244, to which the act of 1846 is a *supplement*, applies to all kinds of *stock,* and the new rule of evidence is applied to "any trial had in pursuance of the" latter act. We insist, 1st, that the word "*stock,*" and the words "*et cetera,*" used in the act of 1846, include negroes. But, 2nd, if this be not so, that all difficulty is removed by the act of 1841, ch. 266, which provides, that all the remedies given by the acts of 1837, ch. 309, and 1838, ch. 244, "shall apply and extend to *every description* of property and estate, whether real or personal." All these acts, together with the subsequent law of 1846, are *in pari materia,* and must, therefore, be construed together. 2 *G. & J.*, 365, *State vs. Boyd.* 66 *Law Lib.*, 281. 9 *G. & J.*, 483, *Tide Water Canal Co. vs. Archer.* 7 *Gill*, 325, *Day vs. The State.* 3 *Md. Rep.*, 60, *Ranoul vs. Griffie.* 9 *Law Lib.*, 696.

3rd. That the *release* could not render the parties competent as witnesses. If it could, then the act of 1846 was futile, because parties similarly implicated were by the common law incompetent without a release. 1 *Camp.*, 251, *Miller vs. Falconer.* 3 *Cow. Phillips on Ev.*, 105. So to construe the act would convict the Legislature of an absurdity, in designing

additional protection to the public against the recklessness of rail road agents; for by such construction it affords none. But upon other grounds the release was not legally sufficient to render the witnesses competent:—1st. It was not proven to have been executed by competent authority. 66 *Law Lib.*, 182. 3 *Md. Rep.*, 311, *Susq. Bridge & Bank Co. vs. General Ins. Co.* 2nd. It did not release the contingent liability of the agents in the particular case. 15 *Mass.*, 110, *Gibson vs. Gibson.* 7 *Do.*, 155, *Hastings vs. Dickinson.* 4 *Pick.*, 368, *Francis vs. Boston & Roxbury Mill Corp.* 1 *Starkie on Ev.*, 125. Again, the witnesses named in the release were incompetent to testify *non obstante* the release, because, in addition to civil responsibility, they were liable to indictment for the result of their carelessness, and the verdict in the civil case might be used on the criminal trial. 4 *Phillips on Ev.*, 23, 47, 48.

4th. That the ruling of the court below in the second exception was erroneous:—1st. Because no right of exception to the *admissibility* of the rejected evidence was reserved in the agreement. 7 *Md. Rep.*, 87, *Gibbs vs. Gale, et al.* 2nd. The statements of Benson were not mere opinions, but being based on facts recited, were knowledge. 7 *Gill*, 27, *Brooke vs. Townshend.*

*Thomas G. Pratt* for the appellee, argued:

1st. That the act of 1846, properly construed, only provides that the agents of the rail road company are to be deemed *interested* in all suits against the company, for losses occasioned by their cars, and therefore that they shall, *because of such interest*, be held as incompetent witnesses for the company. This is manifest from the words, "and *responsible* as such to said rail road company, for negligence," &c., used in the 2nd section of the act. But it is insisted, that the agents of the company having *no interest* in the event of the suit, because of the release of the company to them, were competent witnesses.

2nd. But if the true construction of this act would make the agents of the company incompetent witnesses, although not interested in the event of the suit, then we insist, that as

it is a law imposing penalties upon the company and its agents, it must be construed *strictly,* and upon such construction, that it does not apply at all to *negro slaves.* This law provides, that the "owner of any *horse, cow, mule, hog or sheep, &c.,* killed or injured by the engines or cars," shall recover, &c., and that it shall not be competent for the company, "in any trial *had in pursuance of this act,* to adduce the evidence" of their agents. This language will not be construed, to apply to any other injuries than those *specified in the act,* and consequently it cannot apply to any injury *to slaves.* The act of 1841, ch. 266, only applies the *remedies* in the acts of 1837 and 1838, to all kinds of property, but has no application to the act of 1846, passed *subsequently.* Again, this latter act of 1846, makes no reference whatever to the act of 1841, it is and purports to be *only* a supplement to that of 1838.

3rd. That this act, if construed as the appellant insists, is *unconstitutional,* for various reasons:—1st. Every white citizen of Maryland, of sufficient intelligence and religious instruction to understand and appreciate the obligation of an oath, and who is not interested in the event of the suit, has the constitutional right to testify in regard to any matter within his knowledge, pending before the courts of the State, *(Bill of Rights, Art.* 33,) and, consequently, any construction of the act of 1846, which would make these witnesses *incompetent,* would violate their constitutional rights. 2nd. Every defendant in Maryland has a right to have to testify for him, any white citizen who has a knowledge of the facts and no interest in the event of the suit, and consequently, the act of 1846, as construed by the appellant, would deprive the defendants here of their constitutional right to have the testimony of these witnesses. 3rd. The act of 1838, ch. 244, assumes, that all losses occasioned by the company have occurred through their negligence, and by the construction proposed to be given to the act of 1846, the company is deprived of the testimony of the only witnesses, who, by possibility, could prove the use of due diligence on their part; and therefore, that the act of 1846 is unconstitutional, because it deprives these defendants of a fair and impartial trial in the courts of justice of the State.

*Smith's Com. on the Const.*, 272, 273, 281, 284, 285, 286. 2 *Pet.*, 657, *Wilkinson vs. Leland.* 9 *Cranch.*, 43, *Terrett vs. Taylor.* 1 *Bay.*, 252, *Bowman vs. Middleton.*

4th. That the release from the rail road company to the witnesses was in proper form, and did effectually relinquish all claim, past, present or future, of the company, against the witnesses, growing out of the death of the negro of which they were to testify.

5th. That the true construction of the agreement, which forms the subject of the second exception, is, that the affidavit of the witness should be read, to have the same effect, and subject to the same objections, as if he were present. Consequently the defendants reserved the right to object to any portion of the testimony which was legally inadmissible, and the *opinion* of the witness being inadmissible, was properly excluded.

TUCK, J., delivered the opinion of this court.

Under the first exception the counsel have discussed the applicability of the act of 1846, ch. 346, to cases instituted for the recovery of damages for injuries to negro property, the validity of that act, and the effect of the defendants' release to the witnesses whose testimony was objected to, it being contended, on the part of the appellant, that the act is valid, and applies a rule of evidence to the case under consideration, for the benefit of the plaintiff below, from which he could not be deprived by the release offered in evidence.

By the act of 1838, ch. 244, rail road companies in this State are made responsible "for injuries resulting in death, or otherwise, inflicted upon any stock, as cattle, horses, sheep, hogs, &c., or by fire, occasioned by their engines or carriages, upon any of their roads," &c., &c. The act of 1837, ch. 309, had given a remedy for injuries to woods, fields or other property, burned or injured by fire or sparks from rail road engines. The act of 1841, ch. 266, which is entitled a supplement to both these acts, provides that all the remedies which are given by them, or by either of them, "shall apply and extend to every description of property and estate, whether

real or personal, and to all manner of title and interest in or to any property or estate, whether legal or equitable, and that the said acts shall be so construed by all the courts of this State, in all cases depending or to be instituted to recover damages under the said acts of Assembly or either of them." The act of 1846, ch. 346, is a supplement to that of 1838, ch. 244, not referring in any manner to those of 1837 and 1841. The first section provides, "that the owner of any horse, cow, mule, hog or sheep, &c., killed or injured by the engines or cars of either of the rail road companies of this State, shall recover full damages and costs for such killing or injury." The second section declares: "That it shall be competent for said rail road company to prove, by disinterested witnesses, that the damage or injury sustained was the result of unavoidable accident, and if satisfactory evidence be adduced before the tribunal trying the issue, said rail road company shall not be liable; but it shall not be competent for said rail road company in any trial had in pursuance of this act, to adduce the evidence of any conductor, agent, or other person in the employ of said rail road company, who may be conducting the engine or driving the cars which may do the killing or injury as aforesaid, or the evidence of any agent or employer (employee) who may be acting in the capacity of agent, and responsible as such to said rail road company, for negligence, carelessness or wilfulness, by which any stock may be killed or injured as contemplated by this act."

It will be observed that neither of these acts prescribe a rule of evidence for the support of the actions which they authorize, except the last. But it is contended, on the part of the appellant, that being *in pari materia*, they must be considered as parts of one remedial act, designed to suppress the same mischief as to every description of property, and that, therefore, the rule of exclusion directed against the officers and agents of the company, when offered as witnesses where stock is destroyed, is equally applicable in this case, the subject of the injury being within the general terms of the act of 1841.

The general rules for the interpretation of statutes recognized in the cases of *State vs. Boyd,* 2 *G. & J.,* 374, and

*Canal Co. vs. Rail Road Co.*, 4 *G. & J.*, 152, are not to be denied; but they are not the only principles applicable to cases like the present. And while it is conceded, that remedial acts are to receive a liberal construction for the advancement of the remedy, and to prevent the mischiefs within the intent and meaning of the acts, it must be remembered that this is but a secondary rule, and not always to be observed. *Dwarris on Statutes*, 735. "Statutes are *sometimes* extended to cases not within the letter of them, and cases are *sometimes* excluded from the operation of statutes, though within the letter:" for the purpose of giving effect to the intent of the law makers, 2 *G. & J.*, 374. But here the point is, to ascertain whether the Legislature did intend that the rule of evidence, in this act of 1846, should be extended to actions for other kinds of property than those mentioned.

The words of the act are first to be resorted to, and if these are plain in their import they ought to be followed. The most eminent judges have expressed regret, that this cardinal rule has been so often departed from, and statutes construed to embrace cases not within the letter—rather presuming what the Legislature meant, than gathering their intent from the language of the law, and this has been done generally, in order that a particular grievance might not go unredressed, when the law makers had not made special provision for such cases; *Lord Tenterden* said in 6 *B. & C.*, 475, "there is always danger in giving effect to what is called the equity of a statute; it is much safer and better to rely on and abide by the plain words, although the Legislature might have provided for other cases, had their attention been directed to them." This caution is particularly to be observed, where that construction is opposed by other rules. General words are sometimes used by way of example, and by construction, lesser cases are included. But, on the contrary, the words employed are sometimes restrictive, and exclude things not mentioned, as in *Rex vs. Cunningham*, 5 *East.*, 478, where the statute of 43 *Elizabeth*, *ch.* 2, in relation to coal mines, was held not to include tin, lead and copper mines. The presumption is, that the Legislature will express its meaning in language to be understood, and the rea-

son why acts are extended beyond the letter is, that all cases cannot be foreseen and provided for in terms; but it must be within the same mischief or cause of making the act. *Co. Litt.*, 24, *sec.* 2. We are not to enlarge statutes, so as to embrace every possible wrong that the Legislature might have included in the same act; but it must be collected from the act that the wrong sought to be redressed, was one of the considerations for passing the act. If this conclusion cannot be arrived at, it is a *casus omissus*, which a court of law cannot supply. 5 *Com. Dig., Parliament R.*, 13. *Jones vs. Smart*, 1 *Term Rep.*, 52.

The act of 1846, like that of 1838, enumerates particular kinds of property, and covers every description of stock. And although the act of 1841, enlarges the application of the act of 1838, by embracing all property, it is remarkable that the Legislature, with these acts before them, when the last was passed, if slaves were in their contemplation, should have in terms confined it to a particular description of property, and, in prescribing a rule of evidence to give effect to the remedy, have omitted all mention of the most valuable of personal estate, and left its owners to the uncertain equitable construction of that portion of the act, which is said to afford the only substantial protection to the master. The case appears to be within the doctrine of *Rex vs. Cunningham.* The words must be taken in their ordinary acceptation. *Dwarris*, 702. The terms "stock" and "*et cetera*," employed in this act, certainly embrace other things not enumerated, but we cannot discover that they were designed to include negroes. Besides the special mention of property, in the first section, the second confines the incompetency of the persons designated, to cases of liability on account of negligence, by which any *stock* may be killed or injured. And we think it as reasonable to suppose that negroes were intentionally omitted, because of their greater capacity to avoid such dangers than stock, as that they were designed to be comprehended by the general terms employed.

We are not now inquiring whether the second section of the act of 1846 is valid or not, but, merely, in what cases the

new rule of evidence it prescribes was designed by the Legislature to operate. If this were a strictly penal statute the company certainly would not be amenable to its provisions. For a case in point, see *Dwarris*, 737. 3 *Bingham*, 580. But though not of that character, these acts are special in their operation, imputing culpable negligence to the agents of the companies, for which they are made responsible, unless they can establish their own innocence, and, with the burden of proof thus cast upon them, the act of 1846 takes away the common law right to have their cases tried upon principles common to other suitors in the same court. The charter of the appellee secures the capacity to sue and be sued, subject of course, to subsequent legislation for the general administration of justice. When, therefore, an act of Assembly denies to one class of suitors a remedy or defence which others enjoy, and the question is, as to the application of its provisions to cases not specified, and that depends on the doctrines of equitable construction in view of the intent of the lawmakers, the court should be satisfied, before extending its operation beyond the language employed, that the case is within the mischief or occasion that was in the minds of the Legislature at the time of its passage. For we are not to presume, that the Legislature design to make innovations upon the common law, or to take away the company's rights by implication. 3 *Kent*, 464. *Warner vs. Fowler*, 8 *Md. Rep.*, 30.

We are not prepared to say, as contended in argument, that the safety of passengers in the cars must be regarded in the application of the remedy provided by these acts. That it was a proper subject of legislative concern none will deny, but we look in vain for any such motive for passing these laws. The sole object seems to have been the protection of property on and along the roads. None can sue, under their provisions, except those who may suffer by the destruction of property. It is manifest that, in an action by a passenger, for personal injuries sustained on the road, the rule of evidence prescribed in the act of 1846, would not avail him, and while the owner of stock injured by the cars on the same occasion, might recover, by excluding certain witnesses, a passenger

might fail in his suit, by the application of the common law rule; and the anomaly would occur of two suits in the same court, tried and determined upon different principles of evidence. In a case of doubt, upon the words, such considerations would apply, but where they appear to have been overlooked by the Legislature, and the anomalous effect may be as we have suggested, we do not think the act should operate beyond the plain import of its language, and when a plaintiff claims the benefit of its provisions his case ought to show that he is entitled to the remedy in the form in which he seeks to have it administered.

Upon a careful consideration of the subject, we are of opinion, that this case is not provided for by the second section of the act of 1846, and that the plaintiff was rightfully held to the common law doctrine, of evidence. *Dwarris*, 711. *Brown's Maxims*, 39.

This view of the first proposition renders it unnecessary, if not improper, to discuss the validity of the second section of the act of 1846. Such grave questions should not be passed upon, unless the point necessarily arises, and gives to the judicial expression a decisive effect in the particular case, which cannot be affirmed, where the act in review has no application to the matter in hand.

We are next to inquire whether the release restored the competency of these witnesses, conceding, that they were before incompetent. There is no proof that the paper was executed by the president of the company; but it was under their seal, professing to have been executed by the proper officer, and was actually exhibited and filed in court, as their act and deed, for the purpose of affecting the course of judicial proceedings. If it had not been properly executed the company would not, afterwards, in any court, in a trial by it against these witnesses, for negligence in this particular act, be heard to deny its validity, Such a defence, after it had obtained the benefit of the paper as a release under seal, would be a fraud upon the administration of justice not to be tolerated. The case of *Phil. Wil. & Balt. R. R. Co. vs. Howard*, 13 *Howard*, 307, 335, is directly in point, where the corporation,

Scaggs *vs.* Balto. & Wash. Rail Road Co.

having been sued in *assumpsit,* and defeated the action, on the ground that the contract was under the seal of the company, was not allowed, in a subsequent action of covenant on the sealed agreement, to show that the instrument sued on had not been properly sealed. The court said, (p. 337.) "we are clearly of opinion, that the defendant cannot be heard to say, that what was asserted on the former trial was false, even if the assertion was made by mistake." The party having had the benefit of the instrument in one action was held to be bound by it in another.

We perceive no error growing out of the form of the release. The liability of the witnesses to the company was merely contingent, depending on the result of this suit, so far as the verdict could be relied on as the measure of damages, and the company could have released no certain amount. These releases must necessarily be of this, or some such form. The party thereby undertakes to give up something that he may gain by the verdict, or to discharge a liability to himself that may be fixed thereby.

The *second* exception relates to the testimony of Benson. It was agreed, that his evidence should be taken as set forth in the affidavit, "as if he was present." We think the correct reading of this agreement is, that his statement should be received to have the same effect, as if the same matter had been offered by him *ore tenus,* and that any thing that could have then been objected to was equally inadmissible, when presented as part of the affidavit. The parties must have meant this, otherwise the agreement would not have contained any such qualifications. The statements of Benson, objected to, being merely his opinions, we think they were properly excluded.

*Judgment affirmed.*