# MARYLAND REPORTS.

## DECEMBER TERM, A. D., 1863.

WILLIAM H. F. WILSON AND JOHN PHILLIPS, *vs.* THE STATE OF MARYLAND, AT THE INSTANCE AND FOR THE USE OF WILLIAM DAVIS.

SLAVES—TRANSPORTATION OF.—THE ACT OF 1838, CH. 375, entitled, "An Act to prevent the transportation of people of color upon *railroads or in steam boats,*" after reciting in the preamble the great loss which owners of slaves had suffered by means of *railroads* and *steam boats,* enacts, "That it shall not be lawful for any slave to be *transported* on any *railroad* charter-ed by this State, or any *steam boat, tow boat, or other vessel* navigating the waters of this State, *without a permission in writing* from the owner of such slave, under the penalty," &c., "to be recovered in the name of the State, from the President, Directors and Company of said railroad, or the *owners* or *captain* of said steam boat, tow boat, or *other vessel,* as the case may be, by action of debt," &c.; HELD:

1st. That the first section, both in its letter and spirit, applies to the transportation of any slave, without the written permission of his owner, on any steam boat, tow boat, or other vessel navigating the waters of this State, *however propelled or moved.*

2nd. That the enacting clause, expressly enumerating "*other vessels* navigating the waters of this State," cannot be restrained by the title to one class of vessels alone.

3rd. That transportation in the sense of the Act, means *asportation,* or taking out of the possession of the owner, without his privity and consent, without the *animus revertendi.*

4th. That the Act designed to punish those who, without the written permission of their owners, *and against their will and consent,* carried slaves *from one place to another,* thereby furnishing them *facilities of escape.* It is not

1   v. 21.

Wilson & Phillips *vs.* State, use of Davis.

necessary to constitute the offence punishable under the 1st section, that an escape should actually have occurred.

5th. The words in the Act, *"without a permission in writing from the owner of such slave,"* were not intended to apply to a case of *hiring* a slave by the owner to the master of a vessel, as a seaman to work on board of said vessel.

————: DEMURRER.—The fourth plea of the defendants averred, "That, at the time of the alleged transportation, the said negro W. was hired by the owner to the defendants as a seaman or hand to work on board of, and assist in, the management and sailing of the said vessel of the defendants, and as such hired hand or seaman, was received on board of the said vessel, and was assisting in the navigation and working thereof with the consent and knowledge of his owner." HELD:

That this is a special traverse of the several counts in the *nar.*, alleging the negro *was transported*, and being admitted by the demurrer to be true, is a sufficient bar to the action, this defence not being included in the other pleas upon which issues were joined.

THE ACT OF 1838, CH. 375, is a penal one, and not to be construed, contrary to its spirit, with latitude, but rigidly, so as to confine its operation to the acts designed to be punished.

APPEAL from the Circuit Court for Anne Arundel County:

This was an action of debt brought October 1st, 1860, in the name of the State, at the instance and for the use of William Davis, to recover the penalty of $500, imposed by the Act of 1838, ch. 375, for the illegal transportation by the appellants, (who were the defendants below,) of the negro slave of Davis, from Annapolis to Baltimore, on board the *"John T. Barber,"* a *sail vessel* owned by the defendants. The declaration contained three counts, laying the ownership of the negro, and the manner of transportation, in different forms. The defendants entered a general demurrer, which was overruled by the Court, (WILLIAM H. TUCK, SPECIAL JUDGE,) the grounds of the demurrer relied on by the defendants being, that the Act in question applied only to *steam boats* or *vessels propelled by steam*, and not to *sail vessels*, and that the declaration did not aver that the slave *escaped* by means of such transportation.

The defendants then pleaded the nine following pleas:

1st. That the negro slave Washington was not transported on board the sail vessel of the defendants, navigat-

ing the waters of the State, without a permission in writing from the said Elizabeth P. Davis, in her lifetime, and without a permission in writing from the said William Davis, as administrator as alleged.

2d. And for a second plea they say, that the said negro Washington was not, at the time alleged in the declaration, the slave of William Davis, the administrator c. t. a. of Elizabeth P. Davis, deceased, and that the said William Davis was not, at the time of the alleged transportation, the owner of the said negro as administrator, as alleged in the said declaration.

3d. And for a third plea they say, that the said negro slave Washington, was not transported from the city of Annapolis to the city of Baltimore in the sail vessel of the defendants, without a permission in writing from the said Elizabeth P. Davis, and without a permission in writing from the said William Davis, administrator, as alleged in said declaration.

4th. And for a fourth plea they say, that at the time of the alleged transportation, the said negro Washington was hired by his owner to the defendants as a seaman or hand, to work on board of, and assist in, the management and sailing of the sail vessel of the defendants, and as such hired hand or seaman was received on board of the said sail vessel, and was assisting in the navigation and working thereof, with the consent and knowledge of his said owner.

5th. And for a further plea they say, that the said negro Washington did not escape from his owner in consequence or by reason of having been transported on board of the vessel of the defendants without a permission in writing from his owner.

6th. And for a further plea they say, that the said negro Washington at the said time alleged, was travelling in company with the defendants, as the agents of the owner of said slave.

7th. And for a further plea they say, that the negro slave

Washington, at the time alleged in the said declaration, was travelling on the said sail vessel as the servant and attendant of the defendants, being white persons, the said Washington being then and there *bona fide* employed as such servant or attendant.

8th. And for a further plea they say, that they are not indebted to the said State, as is averred in the said declaration.

9th. And for a further plea they say, that they are not guilty of the several matters above alleged against them.

The plaintiff joined issue on all the said pleas except the 4th and 5th, to which latter it demurred; and the Court (TUCK, SPECIAL JUDGE) sustained the demurrer and overruled said pleas.

The case was then tried upon the issues joined on the other pleas, and in the course of the trial three exceptions were taken by the defendants to the rulings of the Court. The nature of these exceptions, and so much of the argument of counsel as applied to them, is omitted here, as they were not passed upon by the Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH and COCHRAN, J.

A. *Randall* and A. B. *Hagner*, for the appellants:

I. In behalf of the appellants it is contended, that the Act of 1838, ch. 375, does not apply to the case of a transportation on board of *a sail vessel*, and also that the *nar.* should have averred that the negro *escaped in consequence* of the alleged transportation.

The general principles applicable to the construction of penal statutes are well defined. They are to be strictly construed, and the books from the earliest times are full of remarkable cases in which the Courts have tenaciously adhered to this humane principle. *Dwarris on Statutes*, 736, 737, 743. *Smith's Commentaries*, 854, 855, 856. *Fletcher vs. Lord Sondes*, 3 *Bing.*, 580. 5 *Dane's Abr.*, 244, sec. 8.

6 *Dane's Abr.*, 588, sec. 16. *Caldwell vs. Holly*, 1 *A. K. Marsh.*, 429. *Pryor vs. Commonwealth*, 2 *Dana*, 298. *McCall vs. Justices of Clark Co.*, 1 *Bibb*, 516. *State vs. Smith*, 8 *Yerg.*, 150. *Bettis vs. Taylor*, 8 *Port.*, 564. *State vs. Brown*, 4 *Port.*, 412. *Dwarris*, 754. *Short vs. Hubbard*, 9 *Eng. Com. Law*, 431. *Regina vs. Malty*, 8 *Ellis & Black*, 92 *Eng. Com Law.*, 712. *Law Register, March* 1862, *pp.* 278, 281.

The general principles of construction are stated in *United States vs. Wiltberger*, 5 *Wheat.*, 76. *McKeon vs. Lane*, 1 *Hall*, *N. Y.*, 319. *Bigelow vs. Johnson*, 13 *Johns.*, 428.

In construing the Act, we are justified in examining its *history:—Canal Co. vs. R. R. Co.*, 4 *G. & J.*, 1, 94, 152. *Smith's Com.*, 740.

Its *title:—Canal Co. vs. R. R. Co.*, 4 *G. & J.*, 1, 94, 152. *Smith's Com.*, 698, 700. *Dwarris*, 654.

Its *preamble:—Dwarris*, 655, 762, 697, 698, 705, 709, 716, 761. *Smith's Com.*, 618, 701, 707. *State vs. Balt. & Sus. Co.*, 13 *Md. Rep.*, 188.

We appeal to all these sources of interpretation in support of our position, that the law is only applicable to vessels *propelled by steam*. *Ruth vs. State*, 20 *Md. Rep.*, 436. *Dwarris on Stat.*, 714, 716, 718. Insert the words, "propelled by steam," *after the names*, instead of the word "steam," before them, and there is no obscurity in the effect of the words.

The case must be brought within the legal effect of the statute. 3 *Rob. Prac.*, 612. *Dwarris*, 743. *State vs. Bode*, 7 *Gill*, 328. *Smith's Com.*, 757, 860. *Brightly's Dig.*, 848, sec. 8; 855, sec. 40. *Scaggs vs. B. & O. R. R. Co.*, 10 *Md. Rep.*, 268. *Duvall vs. State*, 6 *H. & J.*, 9. *Mayor, &c., vs. Root*, 8 *Md. Rep.*, 103. *Mayor, &c., vs. Greenmount, &c.*, 7 *Md. Rep.*, 533. *Sandiman vs. Breach*, 7 *Barn. & Cres.*, 96. *Oakley vs. Rigby*, 2 *Bing.*, *N. C.* 732. *Dwarris*, 658. *Jackson vs. Collins*, 3 *Cowen*, 96. *Salkeld vs. Johnston*, 1 *Hare*, 205. *Emanuel vs. Constable*, 3 *Russ*, 436.

The demurrer having been overruled, the defendants filed nine pleas. The plaintiff demurred to the 4th and 5th pleas; the Court sustained the demurrers, and the defendants will contend that this judgment of the Court below should be reversed.

II. The 4th plea avers that, at the time of the alleged transportation, the negro Washington was *hired by his owner* to the defendants, as a seaman or hand to work on board of and assist in the management and sailing of *the sail vessel* of the defendants, and *as such hired hand* or seaman was received on board the said *sail* vessel, and was assisting in the navigation and working thereof, *with the consent and knowledge of his said owner*. The Court below in ruling the demurrer to this plea good, in effect decided that no master could hire his own slave as a hand on a *sail* vessel by parol, and that the master or owner of the vessel could only escape the penalty by procuring a new permission in writing for such trip. Such could never have been the meaning of the Act. In fact it was not designed to apply to the case of a *hiring* at all, but only to the case of a *transportation*, as distinguished from an engagement as a hand on board.

III. The 5th plea was designed to raise the objection, that there could be no recovery of the penalty under the 1st section of the Act, unless the *escape* of the negro was averred as a consequence of the transportation.

The preamble of the Act shows that the escape of the slaves was the evil apprehended, and which this law was passed to prevent. *Duvall vs. State*, 6 *G. & J.*, 9. *State vs. Bode*, 7 *Gill*, 324. *Rex vs. McGregor.* 3 *Bos. & Pull.*, 106. *U. S. vs. Williams*, 3 *Cranch C. C. Rep.*, 65.

*O. Miller* and *Thos. S. Alexander*, for the appellee, argued :

1st. That the Act of 1838, ch. 275, under which this action was brought, applies as well to sail vessels as to steam boats or vessels propelled by steam. *Dwarris on Statutes*, 654, 655, 694, 697, 703, 707, 737, 760 to 763.

*Davidson vs. Clayland,* 1 *H. & J.,* 546. *Laidler vs. Young,* 2 *H. & J.,* 69. *Mayor,* &c., *of Balt., vs. Moore,* 6 *H. & J.,* 382. *Hays vs. Richardson,* 1 *G. & J.,* 366. *Kent vs. Somervell,* 7 *G. & J.,* 265. *Lucas vs. McBlair,* 12 *G. & J.,* 1. *Alexander vs. Worthington,* 5 *Md. Rep.,* 471. *Keller vs. The State,* 11 *Md. Rep.,* 525. *House vs. House,* 5 *H. & J.,* 125.

2nd. It is not necessary to aver, in an action for the penalty given by the first section of this Act, that the slave *escaped* by means of such transportation. The remedy given the owner in case the slave escapes, is provided for in the 2nd section. The first section punishes the illegal transportation, whether the slave escapes or not. The demurrer to the declaration, on this ground, was therefore properly overruled, and the demurrer to the fifth plea properly sustained.

3rd. The matters alleged in the fourth plea constitute no defence to this action. They are not matters of defence allowed by the third section of the Act of 1838, or by any other part of this Act. The demurrer to this plea was therefore properly sustained.

The counsel for appellee also referred to 1 *Tidd's Pr.,* 603. *Stat.* 18th *Elizabeth, ch.* V. *Stat.* 4th *Hy.* VII., *ch.* 20. These statutes are reported by Kilty as found applicable in this State, and proper to be incorporated. *U. S. vs. Morris,* 10 *Wheat.,* 246.

BOWIE, C. J., delivered the opinion of this Court:

The questions presented by the record in this case, arise upon three demurrers. The first, filed by the appellants to the *nar.,* (which was overruled by the Court below,) involves the description or kinds of vessels included in the Act of 1838, ch. 375, entitled: "An Act to prevent the transportation of people of color upon railroads or in steam boats." The demurrer to the 4th plea raises the question, of what is the true construction of the words, "to be transported," in the first section of said Act? And the demurrer

to the 5th plea, whether an actual escape of the slave transported, was necessary to sustain the action under that section. The demurrers to the pleas being sustained, and that to the *nar.* overruled, the defendant appealed.

It would be superfluous to recapitulate the rules for the construction of statutes, laid down in the text books, and repeated in innumerable adjudged cases. The compendium of the law on this subject, in 10 *Md. Rep.*, 277, furnishes a sound and safe precedent. "The words of the Act are first to be resorted to, and if these are plain in their import, they ought to be followed. The most eminent judges have expressed regret, that this cardinal rule has been departed from and statutes construed to embrace cases not within the letter, rather presuming what the Legislature meant, than gathering their intent from the language of the law; and this has been done generally, in order that a particular grievance might not go unredressed, when the law makers had not made special provision for such cases." Ld. Tenterden said in 6 *B. & C.*, 475, "There is always danger in giving effect to what is called the equity of the statute; it is much safer and better to rely on and abide by the plain words, although the Legislature might have provided for other cases had their attention been directed to them."

Again, in 13 *Md. Rep.*, 189, this Court construing the Act now under consideration, used the following language: "The Act must be interpreted by the language employed, which cannot be construed so as to aid that defence, without ascribing to the Legislature an intention not apparent from the letter." The transportation of slaves, without written permission, was the Act against which this Legislation was directed. *The reasons for passing the law, are set out in the preamble.*" * * * *

"It is true, that statutes are not always to be interpreted by their letter. Sometimes cases not within the words are held to be within the Act, and other cases are by construction taken without the operation of the law, though cover-

ed by the language, according to the intent and design of the Legislature to be collected from the whole Act, with reference also to the mischief or cause of making the law." Regarding the evil to be remedied by the Act, as declared by this Court in 13 *Md. Rep.*, to be the transportation of slaves without written permission, and looking to its language alone, we cannot doubt that the first section, both in its letter and spirit, applies to the transportation of any slave without the written permission of his owner on any railroad chartered by the State, or any steam boat, tow boat or other vessel navigating the waters of this State, however propelled or moved. The enacting clause expressly enumerates "other vessels navigating the waters of this State, and cannot be restrained by the title to one class of vessels alone."

As to what is meant by the words, "to be transported," in the Act under consideration, which is the point raised by the demurrer to the fourth plea, there can be as little doubt, when the words are interpreted in the spirit of the law, and with due regard to its objects. The Act designed to punish those who carried from one place to another, without the written permission of their owners and against their will and consent, slaves, thereby furnishing them facilities of escape.

Transportation in the sense of the Act, means asportation, a taking out of the possession of the owner, without his privity and consent, without the *animus revertendi*. The fourth plea of the appellants averred, that at the time of the alleged transportation, the said negro Washington was hired by his owner to the defendants as a seaman or hand, to work on board of and assist in the management and sailing of the said vessel of the defendants, and as such hired hand or seaman, was received on board of the said vessel, and was assisting in the navigation and working thereof, with the consent and knowledge of his owner.

This is a special traverse of the several counts in the *nar*. alleging the negro was transported, and being admitted

by the demurrer to be true, is, we think, a sufficient bar to the action.

The sixth and seventh pleas, which were framed on the third section of the Act, declaring its provisions should not extend to any slave travelling with his master or mistress, or their agent, or as the servant or attendant of any white person, *bona fide* employed for that purpose, did not include the defence set up by the fourth, in as much as they admit the charge of transportation and avoid it; whereas the latter, the fourth plea, specially denies the fact. The issues presented by these pleas were essentially different, requiring different evidence to support them.

This Act being a penal one, is not to be construed contrary to its spirit, with latitude, but rigidly, so as to confine its operation to the Acts designed to be punished. It is an Act for the protection of property, not for the encouragement of informers. There is no law of this State requiring slaves to be hired in writing, whatever the occupation they are hired for. To give this Act the construction contended for, would enable the master under pretext of hiring his slave for a day, to subject the owners of vessels to the penalty of $500, for using the slave in the service he was engaged to perform.

The fifth plea set up as a defence to the action, the fact that the negro did not escape. It appears from what has been said, that the Act designed to prevent such transportation as furnished facilities for escape; it is not necessary to constitute the offence punishable under the first section that an escape should actually have occurred. The second section provides a remedy for the case of an escape, giving the owner an action whereby he may recover the whole value of the slave lost.

We concur with the Court below in its rulings on the demurrers to the *nar.* and the 5th plea; but considering there was error in sustaining the demurrer to the 4th plea, the judgment below will be reversed.

*Judgment reversed.*

(Decided Feb'y 5th, 1864.)