## BALTIMORE CITY COURT.

Filed April 4, 1923.

THE STATE OF MARYLAND
VS.
ROBERT W. WILLIAMS, ADMINISTRATOR C. T. A. OF WILLIAM F. AIREY, DECEASED.

*Alexander Armstrong*, Attorney General, and *Robert F. Leach*, State's Attorney, for plaintiff.

*Janney, Stuart & Ober* for defendant.

STEIN, J.—

This is a "Special Case Stated" under sec. 124, Art. 75, 2 Vol. Bagby's Code, folio 1691, to have determined whether or not the State Tax on Commissions of Executors and Administrators, under Chapter 559 of Act of 1916; sec. 115, Art. 81, page 634, 4 Bagby's Code, can be charged against the commission allowed successive executors or administrators of the same estate; where in a former account an executor or administrator, stating that account paid as the State tax on his commissions of one per cent. on the first $20,000 and one-fifth of one per cent. on the balance of the estate.

The special case stated shows that on May 2nd, 1921, J. Maude Watson and Robert W. Williams, administrators *pendente lite* of the estate of William F. Airey, deceased, filed in the Orphans' Court of Baltimore City, their first and final account, and as such administrators paid out of their commissions of $2,236.46, the State tax thereon of $447.29, *i. e.*, one per cent. on the first $20,000 of their estate, and one-

fifth of one per cent. on the balance; then distributed the balance of said personal estate, to wit: $138,400.39, to the said Williams as administrator c. t. a. of said William F. Airey, deceased; who, by his account filed on the same day showed such personal estate to have been increased by the sum of $11,438.17 of collections, making total assets of $149,839.56, on which Mr. Williams was allowed commissions of $2,298.40, out of which the State demanded the State tax of $459.68, *i. e.*, one per cent on the first $20,000 of the estate in the administrator's hands, and one-fifth of one per cent. of the balance, which payment the administrator refused to make, but offered and did pay without prejudice $22.88, one-fifth of one per cent. on the $11,438.14 of new assets coming into his hands. This suit is brought to have determined whether or not, out of his commissions of $2,298.46, the defendant administrator should pay the State appointing him either $22.88 or $459.68.

The State claims the "Tax on Commissions" is a tax on the office of executor or administrator, and that under the very words of the act each holder of that office must pay the tax on his commissions, without regard to the question, as to the amount of the tax paid by a predecessor in office; the defendant, while conceding such words are plain and broad enough to justify this construction, claims these words must be construed in the light of the mischief intended to be cured by act, and when so construed, the State, without regard to the number of successive administrations on the same estate, can only collect a tax on commissions of one per cent. on the first $20,000 of the estate, and one-fifth of one per cent. on the balance of the estate.

Chapter 184 of Acts 1844, passed February 22nd, 1845, which was the first act imposing a tax on commissions, is entitled:

"An Act imposing a tax on commissions allowed to executors and administrators *to aid in paying the debts of the State.*"

Section one of which is as follows:

"Sec. 1. That *in all cases* of grant of letters testamentary or of administration * * * the commission allowed * * * to executors and administrators shall be subject to a tax for the bene-

fit of the State of one-tenth of the sum so allowed."

After the passage of this act, in many cases a loss of revenue to the State resulted, because

A. Executors and administrators frequently did not claim commissions or claimed only the smallest commissions, or

B. The will provided a cash bequest, in lieu of commissions.

In attempts to correct this, at least seven other acts on this subject were passed, viz: Acts 1845, C. 391; 1847, C. 230; 1860, C. 163; 1864, C. 372; 1865, C. 127; 1874, C. 483, sec. 98, and 1916, C. 559; the words of which acts were either, that in *all cases* said tax was to be imposed, or that "all commissions" shall be subject to a tax. The act now in force, sec. 115 of Chapter 559 of Acts of 1916, approved April 18, 1916, 4 Bagby's Code, page 634, sec. 115, Art. 81, in so far as it bears on the question here, is substantially as follows, viz:

*All commissions allowed* to executors or administrators shall be subject to a tax for the benefit of the State, of an amount equal to one per cent. on the first twenty thousand dollars of the estate and one-fifth of one per cent. on the balance of the estate; and said tax shall be due and payable whether the executor or administrator waives his commissions or not, *it being hereby intended that no commissions less than this tax shall be allowed * * * and* that no waiver of commissions shall defeat the payment of the tax. And, when a legacy is left to an executor by way of commission, such legacy shall be reckoned in the commissions fixed by the Court."

In this, as in the former acts, we have, not only express legislative declarations, that the tax shall be on "All commissions and shall be for the benefit of the State," but we have provisions compelling payment "absolutely and at all events"; and for the first time the amount of the tax is fixed as a percentage on the estate—and not, as in the former acts, as a percentage on the commissions; this change was made to stop the loss caused by the common practice of having the commissions fixed at two per cent., the lowest rate allowed by law, so that now the amount of commission allowed has no bearing on the tax, which is governed by the amount of the estate and not by commissions.

While the words of these acts show so plainly their purpose and intent, the Court of Appeals in Owings vs. The State, 22 Md. 116, 120, said:

"The office of executor or administrator being *generally one of profit*, the General Assembly, in order to increase the revenue of the State, *made their commissions* subject to a tax of one-tenth; where the executor as such, enjoys the benefit of his office, it was proper he should take it *'cum onere'."*

So that the Legislative History and Judicial Construction show these acts were passed for *"the benefit of the State to aid in paying its debts, and that it is a tax on the office of the executor or administrator."*

The defendant contends that because of the decision in St. Mary's Orphans Asylum vs. Hankey, 137 Md. 569, 572, the plain words of the act that "All commissions shall be subject to this tax shall be so limited as to exclude those cases where an estate is settled by successive personal representatives; and by this construction the Act of 1916, C. 559, etc., would read:

"All commissions allowed to executors or administrators (save those allowed successive personal representatives settling the estate) shall be subject to the tax."

The only point decided in the Hankey case was, that without regard to the number of administrations necessary for the settlement of an estate, the entire commissions to be allowed all the executors or administrators so settling it could not exceed the maximum fixed by law, *i. e.*, ten per cent. on the first twenty thousand dollars of the estate and two per cent. on the balance, and that such commissions must be apportioned among the various personal representatives settling that estate.

This is not the question here.

The State of Maryland has created an officer, whose duty it is to settle the personal estate of a decedent; for which the State has fixed compensation to be paid out of the assets of the estate; charging, however, such officer with a tax on his compensation for the benefit of the State. The amount of this tax is fixed as a small percentage on the estate, with a proviso that "no commissions, less than this tax, shall be allowed."

While, as was said in the Owings case, supra, the executor or administrator takes his office "cum onere," that burden rests lightly upon the defendant, who out of his commissions allowed by the State of $2,298.40 is only required to pay the State $459.68.

Knowing that the need for State and municipal revenue is now great and is constantly increasing, so that to raise it severely taxes the ability and ingenuity of those whose duty is to provide it. In the face of the plain words of the act, that all commissions shall be subject to the tax, a Court should not adopt the construction asked by the defendant unless covered by some inflexible rule of law.

The tax is on the office; its amount is fixed as a percentage on the estate in the hands of the executor and administrator; the tax does not come out of the estate, but out of the commissions allowed. The objects of these various acts were to provide means to prevent estates escaping or evading payment of the tax. The question here is: Can the plain words of the act "that all commissions shall be taxed" be limited by the decisions of the Court of Appeals in the Hankey case, supra, so that "all commissions," means all save some commissions?

A statute is to be construed from its plain words, when they are not plain, then the mischief to be remedied can be looked to for aid in the construction.

This rule the Court of Appeals always follows and has framed it in many different ways, as will be seen from the following excerpts:

"The words of the act are first to be resorted to; and if these are plain in their import, they ought to be followed: Wilson vs. The State, 21 Md. 8.

"We are first to consider the words employed and interpret them according to their plain ordinary and natural import, having some regard to their order and grammatical arrangement. If they are clear, precise and unambiguous, the Legislature must be understood to mean what is plainly expressed." Maxwell vs. The State, 40 Md. 273-291.

Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction, for the purpose of either *limiting* or *extending* their operation.

It would be dangerous in the extreme to infer from extrinsic circumstances, that a case for which the words expressly provide, shall be exempt from their operation.

It is only in cases when the meaning is doubtful, that the Courts are authorized to indulge in conjecture as to the intention of the Legislature, or to look to the consequences on the construction of the law. When the meaning is plain, *the act must be carried into effect, according to its language*, or the Courts would be assuming legislative authority. Cearfoss vs. The State, 42 Md. 403-407.

It is doubtless a sound and recognized rule that statutes should be construed with a view to the original intent and meaning of the makers, and such construction be placed upon them as best answers that intention, which may be collected from the cause or necessity of making the Act or from foreign circumstances, and when the intent is discovered it ought to be followed. * * * *But it must be a very clear case of intent to justify a departure from the words of the law.* It would be dangerous and unwarrantable for a Court to grope for an intent, or to make one from their own ideas of policy and morals, and on that ground say that a particular case is withdrawn from the operation of the plain and unambiguous language of a statute. Hawbecker vs. Hawbecker, 43 Md. 516-519.

When the language of a statute is *clear* and *unambiguous*, a meaning different from that which the words plainly imply and cannot be judicially sanctioned. Even when a Court is convinced that the Legislature really meant and intended something not expressed by the phraseology of the Act, it will not deem itself authorized to depart from the plain meaning of language which is free from ambiguity.

If the language of a statute is plain and unambiguous, there is no room for construction, there being nothing to construe. Smith vs. The State, 66 Md. 215-217.

A case somewhat in point is Roland Park Co. vs. The State, 80 Md. 448, in which the question was whether the Bonus Tax Act of 1890, C. 536, applied to corporations created between January 1, 1890, and the date of the approval of the Act, i. e., April 8, 1890.

The Act provided that every corporation, incorporated since January 1, 1890, should pay a bonus tax; the Act was approved April 8, 1890. The applicant contended that because of the use of the word "since" the operation of the Act was confined to the period between those two dates; the Court, through McSherry, J., held that, as the object of the Act was to raise *revenue for the treasury of the State*, no reason could be assigned or suggested for limiting the period.

Another case even more persuasive is that of Brager vs. Bigham, 127 Md. 148, etc., in which the question was the right vel non of a tenant to redeem a rent reserved in an ordinary rental agreement between landlord and tenant, of a store on North Eutaw street, in this city; in the agreement the term with the rights of renewal extended beyond fifteen years; the rent reserved was not the kind commonly called a ground rent; the renting agreement was not in the form usual in ninety-nine year leases; the tenant claimed the rent to be redeemable because the lease was for more than fifteen years; the landlord claimed it was not, because the rent reserved was not a ground rent, so that while the agreement might be within the words, yet it was not within the spirit of the redemption act or the mischief to be cured. The Court of Appeals, however, among other things, held that as the Act said, "all leases for a longer period than fifteen years," it meant all leases, and not nearly all.

I have directed the clerk to enter a judgment for the plaintiff against the defendant for the sum of four hundred and thirty-six dollars and eighty cents, with interest and costs.