ALBERT A. BRAGER

*vs.*

OLIVE VIRGINIA BIGHAM AND BARBARA E. FORD.

*Leases: for longer term than 15 years; right to redeem; purpose of statute; collateral agreements in leases.*

In general, a lease of a building carries with it the land upon which the building stands.                                    p. 156

The redemption statutes, codified in Article 53, section 24, and Article 21, section 93, relating to the right of redemption of leases, relate to buildings as well as to land.      pp. 155-156

Remedial statutes are to be liberally construed.            p. 158

Chapter 371 of the Acts of 1914, affecting the right to redeem *business* leases, has no application to leases created before the Act went into effect.                                    p. 159

In such a case the right of redemption was in the nature of a contract, and the vested right can not be defeated by legislation subsequent to the lease.            .                        p. 159

Where section 24 of Article 53 of the Code gives the right to redeem any lease for a longer period than 15 years, at any time after the expiration of five years *from date of such lease,* the time for redemption is to be reckoned from the *date* of the lease, and not from the commencement of the term.        p. 160

The right of redemption of leases to which the law applies, for a sum of money equal to the capitalization of the rent reserved at a rate not exceeding six per centum, is a statutory right, and in legal contemplation the lease must be read as if this right were incorporated in it, and as if the parties had contracted with regard to such provision.                        p. 160

These rights of redemption were given for the benefit of the public, and not out of special consideration for the parties to the lease.                                                    p. 160

*Decided December 2nd, 1915.*

Appeal from the Circuit Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER AND CONSTABLE, JJ.

*Randolph Barton, Jr.,* and *Aubrey Pearre, Jr.,* for the appellant.

*J. Wilson Leakin,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The appellees are leasehold owners of the property known as No. 233 North Eutaw street in Baltimore City. The property is subject to an irredeemable annual ground rent of twelve dollars. On January 24th, 1888, John Plummer Bigham and others, the leasehold owners, leased the property to Joseph Sigmund. The lease recited that:

"The said parties of the first and second part do hereby lease unto the said Joseph Sigmund the three-story building, Number 233 N. Eutaw street, near Saratoga street, in the city aforesaid, said building fronting about 22 feet on the east side of Eutaw street, for the term of one year, commencing on the first day of December, eighteen hundred and eighty-seven, and expiring on the thirtieth day of November, eighteen hundred and eighty-eight, at the annual rental of twelve hundred dollars, payable in monthly installments of one hundred dollars each, on the first day of each and every month, and at the expiration of said term which occurs on the first day of December, eighteen hundred and eighty-eight, the aforesaid parties of the first and second part, his, her and their successors, executors, administrators and assigns, do and he and they do hereby lease unto the said Joseph Sigmund, the hereinbefore described premises for the term of ten years, commencing on the said first day of December, eighteen hundred and eighty-eight, and expiring on the thirtieth day of November, eighteen

hundred and ninety-eight (1898), at the annual rental
of sixteen hundred dollars, payable in monthly install-
ments of one hundred and thirty-three dollars and
thirty-three cents ($133.33) each, on the first day of
each and every month during the continuance of this
demise accounting from the first day of December,
eighteen hundred and eighty-eight."

This lease was assigned to the appellant, Albert A. Brager.

Prior to its expiration, the lessors on March 7th, 1896,
executed and delivered to Brager, who was then in posses-
sion of the premises under the assignment referred to, a new
lease of the property for a term beginning *November 30th,
1898,* and ending *April 2nd, 1911,* at an annual rent of
$2,000.00.

On the 16th of March, 1901, the lessors and the appellant
entered into a writing under seal called in the record a "lease
and agreement." It referred to the lease of 1896 and to the
fact that it would expire in April, 1911, and that it had been
agreed between the parties that the said lease should be ex-
tended until *December 4, 1915.* It then provided:

"That in consideration of the premises and of the
sum of one dollar, the said parties hereto do hereby
extend the aforesaid lease of said premises until the
fourth day of December, in the year nineteen hun-
dred and fifteen (1915), such extension to be sub-
ject to all of the terms, conditions and stipulations
contained in said original lease dated the seventh day
of March, eighteen hundred and ninety-six, and re-
corded as aforesaid among the Land Records of Balti-
more City in Liber. R. O. No. 1607, folio 195, etc.
And it is hereby agreed that if the said Brager should
tear down the present building on said premises and
erect another in its place, at said Brager's expense,
said Brager hereby agrees to pay the yearly increase
of taxes over and above the present assessment on the
valuation of said property if such increase of assess-
ment is caused by reason of the erection of said new

building by said Brager, it being understood, how-
ever, that said Brager shall not be prejudiced hereby
by reason of an increase of the tax rate in Baltimore
City."

On February 23, 1906, the lessors granted to Brager, his
personal representatives and assigns, "the right and option
of a lease of the premises known as number 233 North Eutaw
street, in Baltimore City, for the term of years commencing
on the fourth day of December, nineteen hundred and fif-
teen (1915), and to continue for the period of twenty (20)
years thereafter, said lease to be subject to all of the terms,
conditions and stipulations contained in an original lease
between the parties hereto (and Frank R. Ford, who is now
deceased), dated the seventh day of March, 1896, and re-
corded among the Land Records of Baltimore City in Liber
R. O. No. 1607, folio 195, etc., with the exception of the giv-
ing of bond and with the exception of the increase of rent
as herein set forth." In consideration of the execution of
this option Brager agreed to pay a rental of twenty-one hun-
dred dollars per annum instead of two thousand dollars as
provided in the extension of the lease dated March 16, 1901.

Brager was required to avail himself of the option within
a period of thirty days from its date, and he did avail him-
self of the option within the time limited, and on March 16,
1906, a new lease and agreement were executed. The por-
tions of this instrument, which is necessary for the purposes
of clearness to quote, are as follows:

"This lease and agreement, made this sixteenth day
of March, in the year one thousand nine hundred and
six, by and between John Plummer Bigham, substi-
tuted trustee of the will of John Bigham, deceased,
of Baltimore City, in the State of Maryland, party
of the first part, and John Plummer Bigham, of the
City of Baltimore, in the State of Maryland; Olive
Virginia Bigham, of the City of Baltimore, in the
State of Maryland, and Barbara E. Ford, of Fairfax,

Fairfax County, in the State of Virginia, parties of the second part, and Albert A. Brager, of the City of Baltimore, in the State of Maryland, party of the third part. Whereas, the said Albert A. Brager, on the seventh day of March, in the year eighteen hundred and ninety-six, leased from the parties of the first and second parts (and Frank R. Ford, now deceased), the premises known as number 233 North Eutaw street, in Baltimore City, which said lease continues until the second day of April, in the year nineteen hundred and eleven, said lease being recorded among the Land Records of Baltimore City in Liber R. O., No. 1607, folio 195, etc.; and whereas on the sixteenth day of March, in the year one thousand nine hundred and one, the said named parties executed to the said Albert A. Brager a lease on said premises known as number 233 North Eutaw street, in Baltimore City, for a term of years commencing on the second day of April, in the year nineteen hundred and eleven, and ending on the fourth day of December, in the year nineteen hundred and fifteen; and whereas the said parties of the first and second parts have agreed to execute a new lease to the said Albert A. Brager on said premises known as number 233 North Eutaw street, in Baltimore City, subject to the terms and stipulations hereinafter set forth.

"Now, therefore, this agreement witnesseth, That for good and valuable considerations, the said parties of the first and second parts do hereby demise and lease unto the said Albert A. Brager, his personal representatives and assigns, the building and premises in Baltimore City, known as number 233 North Eutaw street, for the term of years commencing on the fourth day of December, in the year nineteen hundred and fifteen, and ending on the third day of December, in the year nineteen hundred and thirty-five, at the rental of twenty-one hundred dollars ($2,100.—) per annum shall be payable monthly in even and equal installments of one hundred and seventy-five dollars

($175.—) each on the fourth day of each and every month during the continuance of this lease. * * *

"Said Brager hereby agrees that between this date and the fourth day of December, in the year nineteen hundred and fifteen, he will tear down the present building on said premises and erect a new building thereon, at his, the said Bragers own cost and expense, said new building to cost not less than the sum of twenty thousand dollars ($20,000). And it is agreed that if the said Brager should not tear down the present building on said premises, and erect a new building thereon as aforesaid, between this date and the fourth day of December, in the year nineteen hundred and fifteen, he will pay to the said John Plummer Bigham, substituted trustee of John Bigham, deceased; John Plummer Bigham, Olive Virginia Bigham and Barbara E. Ford, the cash sum of ten thousand dollars ($10,000), on the fourth day of December, in the year nineteen hundred and fifteen, if he does not erect said building, which sum of ten thousand dollars ($10,000) shall be in lieu of the liability of said Brager to erect said building."

The appellant, claiming the right to redeem and extinguish the rent reserved in the lease of March 16, 1906, gave the required notice of one month to the landlords and lessors of his desire to redeem, and tendered the sum of $35,000.00, —that being the sum of money equal to the capitalization of the rent reserved at six per cent.—and all accrued rent, and demanded from the appellees the execution of a deed at his expense. They declined to execute and deliver a deed for the premises. The appellant thereupon filed in the Circuit Court of Baltimore City the bill in this case, in which he prayed, "that said defendants may be required by a decree of this Court to execute and deliver unto your Orator a deed of the lot hereinbefore described, under the provisions of Article 53, Section 24, and Article 21, Section 93, of the Code of Public General Laws of Maryland, to the end that said annual rent of $2,100 shall be eliminated."

The answer of the appellees admits the title of the plaintiff under the leases and agreements mentioned, and they also admit the service of notice given by the plaintiff of his desire to redeem, and that they refused to execute a deed for the premises. They alleged that the paper writing dated March 16, 1906, was an agreement to lease a house to be erected by the plaintiff prior to December 4th, 1915, for a period of twenty years from said last mentioned date, and that until said date arrived it was a mere agreement to lease in the future, and was not a lease or sub-lease within the meaning of the Acts of Assembly; that it does not profess to be a lease or sub-lease of a *lot of ground,* but only of *a house* to be built by the plaintiff. The answer then sets forth the provision, quoted above, of the lease and agreement of March 16, 1906, by which Brager obligated himself to erect a new building, to cost not less than $20,000, prior to December 4th, 1915, or in case of failure to do so to pay in cash to the lessors the sum of ten thousand dollars, and alleged that the "attempt by the plaintiff to redeem the said rent without either building for twenty thousand dollars or paying cash of ten thousand dollars, the consideration of said paper, is a gross fraud upon the said agreement, and will not be countenanced in a Court of Equity, which requires everyone applying to it for assistance to do equity." The seventh and eighth paragraphs are here quoted:

"7. These defendants show that the various acts mentioned and collated in Article 53, section 24 of the Code, are all on *pari materia,* and all intended to express a public policy against the continuance of long leases, but nowhere to do, as this present bill attempts to, cut up a rent before the same has gone into effect. The present rent is for 20 years from December 4, 1915, and if the prayer of the bill is granted, will be 'redeemed' before it ever had any existence, and without paying the consideration of said lease above mentioned, contrary to equity and good consicence.

"8.  By Act of Assembly, 1914, Chapter 371, it is
provided that the several Acts of Assembly relied on
by the plaintiff 'were not intended to apply and do
not apply to leases or sub-leases of property leased
for business purposes * * * where the term of said
leases or sub-leases, including all renewals thereof pro-
vided therein, shall not exceed 25 years.'  That said
Act took effect April 10, 1914, and therefore conclu-
sively prevents the relief prayed for."

The case was heard in the Court below on bill, answer and
exhibits, "as if the answer were a demurrer."

The lower Court, in a carefully prepared opinion, held
this lease to be a building lease, and further held that the
statutes of the State providing for the redemption of ground
rents did not apply to building leases, and for that reason
by its decree of July 3, 1915, dismissed the bill of complaint,
and from that decree the plaintiff has brought this appeal.

It is, we think, perfectly clear, both from the terms of the
option to lease dated February 23, 1906, and from the lan-
guage employed in the lease and agreement dated March 16,
1906, that the latter instrument was precisely what the par-
ties intended it to be, viz, a lease of the "building and prem-
ises" in question for a term of twenty years, with a reserved
annual rent of $2,100.00,—the term to begin on the fourth
day of December, 1915,—said lease containing also certain
agreements of the parties, one of which we have above tran-
scribed.

It is true that the lease may be properly called a building
lease, and if the redemption statutes do not apply to this
kind of lease, the Court below was right in so holding and
the decree must be affirmed.  But we can not agree to the
conclusion reached by the Court below upon this question.
We find no warrant, either in the language of the statutes,
or in the reasons, or necessity, or public policy which
prompted their passage to draw a distinction between leases
of ground and leases of buildings, or building leases.  No

such distinction is found in the statutes, and a construction which would exclude the latter kind of leases would not only exempt from the operation of the statutes a class of leases comprehended within the language of the Acts, but would defeat in large measure the beneficial purposes for which they were passed.

It is provided by Chapter 207 of the Acts of 1900, approved April 5, 1900 (Section 93, Article 21 of the Code), that: "All rents reserved by leases or sub-leases of land hereafter made in this State for a longer period than fifteen years shall be redeemable at any time after the expiration of five years from date of such lease or sub-leases, at the option of the tenant, after notice of one month to the landlord, for a sum of money equal to the capitalization of the rent reserved at a rate not exceeding six per centum."

The generally accepted rule is that a lease of a house or building carries with it the land upon which the building stands, and it can not be denied that the effect of the broad and general language contained in the lease here under consideration was to tie up the land upon which the building stands for the period of twenty years from December 4th, 1915. To hold that this Act was intended to apply only to ground leases would open wide the door to all sorts of arrangements for the evasion of the Act, and "render the law," as was said in *Swan* v. *Kemp,* 97 Md. 686, "futile for the accomplishment of its object." It would result in permitting the creation of a large class of irredeemable rents, although the land upon which the buildings stood was effectually and indefinitely tied up. We can not adopt, what seems to us, such an unreasonable and disastrous construction of the Act. In *Swan v. Kemp, supra,* the Court had under consideration the Act of 1884, Chapter 485, which, upon the question we are now dealing with, was identical with Chapter 207 of the Act of 1900. The appellant contended that that Act was limited to leases of land, but it was held that the prohibition applied as well to leases of already improved land as to a

lease of vacant land. The facts of that case, briefly stated, were that Mrs. Swan was the owner in fee of a lot of ground on Baltimore street which was improved by a valuable building long used for business purposes. After the passage of the Act of 1884, Chapter 485, she leased those premises to Alonzo Lilly for a period of 99 years renewable forever. In 1897 Lilly executed a deed for the premises to Lawrence B. Kemp and Christian Devries in trust for the purposes stated in the deed. Under the power of sale contained in the deed, the trustees sold the premises to Henry Kirk for $65,000. The purchase price was for the property in fee simple, and it was agreed between the purchaser and the trustees that $50,000 of the purchase money—that amount being the capitalization at six per cent. of the rent reserved by the lease— should be applied to the extinguishment of the rent so reserved. The sale was reported to the Court and ratified. The trustees to consummate the sale tendered the reversionary owners of the fee $50,000, and all arrears of rent, and requested a conveyance of the fee simple interest and reversion. The owners refused to make the conveyance, "and based their refusal upon the claim that the Act of 1884, Chapter 485, did not apply to such a case as this *where a lease was made of property already improved, etc.*" After quoting the provisions of the Act, JUDGE JONES, in delivering the opinion of the Court, said: "A mere reading of the statute is sufficient to show that the lease we are dealing with here is within its letter. No attempt at argument or illustration could make that plainer. Now is it not within the mischief the statute was intended to remedy? within the object it was intended to accomplish? within the policy it was intended to establish?

"In the case of *Stewart* v. *Gorter,* 70 Md. 242, the legislation we have now under consideration was before this Court for construction as to its purport, object and effect, and it was there declared that it 'was the result of a well grounded. belief that these long leases, with their covenants of renewal,

were injurious to the prosperity of the City of Baltimore,
and that sound public policy demanded that all leases here-
after made, if for more than fifteen years, might be ended
at the option of the tenant or lessee upon paying the capital-
ization of his ground rent at six per centum. It was the
system of these long leases, irredeemable until the end of the
term, that the Legislature wished to break up.' This legis-
lation was thus, in effect, pronounced remedial in its char-
acter. It is, therefore, by the settled rule of construction in
such cases to be liberally construed so as to advance the rem-
edy and suppress or prevent the mischief against which it is
directed. Accordingly, it was applied in the case just cited
to a lease which, by its strict, literal terms, did not come
within the wording of the statute. It was there also held
that the policy of the law could not be contravened by a
waiver of its provisions by the parties to the lease. This lat-
ter ruling was made in respect to an express provision in-
serted in that lease that was the subject of adjudication in
the case referred to, to the effect that the lessee 'would not
avail himself of any right that he might have by virtue of
any Maryland statute to redeem the rent at a less sum than
that fixed in the lease.'

"The effect of the ruling of the Court in the case of *Stew-
art* v. *Gorter, supra,* is that the legislation in question should
be construed to carry out its policy; and will not be allowed
to be thwarted by agreements or contractual provisions eva-
sive of its purpose. If express agreements and provisions are
not allowed to avoid the effect of the legislation in question
the Courts will not be astute, in cases falling within the let-
ter and terms of the law, to find reasons for wresting them
from its operation by construction. In the case at bar the
reason urged for holding the lease in controversy not subject
to the operation of the statute, which has been set out, is
without force. By its terms the statute applies to all leases
of land for a longer period than fifteen years. No exception
or qualification appears in it as it reads. Its purpose, as this

Court has held, is 'to break up' the *system* of irredeemable rents. Why is the lease here in controversy not within the reason and policy of such a law as it is within its letter? What sound reason can there be for making a distinction in legislation against the system of irredeemable leases between leases of land already built upon, and leases of land that is forthwith to be built upon? To put upon a measure intended to be prohibitory of such leases a construction making such a distinction would be to render the law utterly futile for the accomplishment of its object. The opportunity which would thereby be afforded for evading the operation of the law and nullifying its purpose is obvious; and is a controlling reason why such a construction should not be adopted. * * * Further than this it has been held by this Court as 'settled by authority,' that where rights are acquired under a statute, in the nature of a contract, or where there is a grant of power, a repeal of the statute will not divest the right or interest acquired, or annul acts done under it."

Upon this branch of the case, our conclusion is that the lower Court was in error in holding that the redemption statutes do not apply to leases of this kind.

If the plaintiff had a right to redeem the rent prior to the Act of 1914, Chapter 371, relied on in the appellees' answer, that right was not affected by the passage of that Act, because his right of redemption was in the nature of a contract and he could not be deprived of vested rights by subsequent legislation.

Code, Article 53, Section 24, declares that: "All rents reserved by leases or sub-leases of land made in this State after April 5, 1900, for a longer period than fifteen years, shall be redeemable at any time after expiration of five years from *date of such lease or such sub-lease, etc."* This is a sub-lease; it is for a longer period than fifteen years; it was dated March 16, 1906, and the bill was not filed for more than five years from the date of the sub-lease, and under the plain provisions of the statute it would appear to be now

redeemable.  But it is said that the words "from date of such lease or sub-lease," mean from "the commencement of the term."  The statute does not so provide, and under such a construction by means of a series of leases and agreements, executed at one time and to take effect at different priods in the future, the law might be successfully frustrated.

To maintain the Act in its full vigor, and to secure its full remedial benefits, we are unwilling to adopt a construction which would inevitably lead to abuses and evasions of its provisions.

With respect to the claim made by the appellees, that the relief prayed for ought not to be granted because the plaintiff has not erected a new building upon the demised premises, or paid in cash $10,000, as provided in the clause of the lease hereinbefore quoted:  There is some apparent injustice in permitting a lessee to redeem before he has performed the agreement on his part embodied in the lease.  But the answer to this objection is twofold: *first,* the lessee's right to redeem "for a sum of money equal to the capitalization of the *rent reserved* at a rate not exceeding six per centum" is a statutory right, and in legal contemplation the lease must be read as if this right of redemption were incorporated in it, and the Court must hold that the parties contracted with reference to and with knowledge of this right; *secondly,* this right was given for the benefit of the public and not out of any special consideration for the parties to the lease, and, as was held in *Stewart* v. *Gorter,* 70 Md. 244, the lessee "can not be estopped by any covenant, however strongly worded, from claiming the right guaranteed him by the Act.  It would be a virtual repeal of the Act if covenants and agreements were allowed to supersede its express provisions."  It follows that the decree of the lower Court must be reversed.

*Decree reversed and cause remanded, the appellees to pay the costs.*