ISRAEL SILBERSTEIN *vs.* JACOB EPSTEIN ᴇᴛ ᴀʟ.

*Redemption    of    Rents—Statute    Not    Retroactive—Renewal Lease—As Continuance of Term.*

Acts 1914, ch. 371, and Acts 1922, ch. 384, exempting leases for business, commercial, manufacturing, mercantile or industrial purposes, for terms not exceeding ninety-nine years, from the operation of Code, art. 21, sec. 93, making rents for a period of over fifteen years redeemable at the option of the tenant, cannot affect the right to redeem a rent created by a lease prior to their enactment.                          p. 256

A lease for ten years, which, while executed in recognition of a privilege of renewal given by a previous lease for ten years, differed from the former lease by omitting the renewal covenant and amplifying a provision in the former lease as to the payment of a mortgage on the property, and was not executed until several weeks after the expiration of the former lease, *held* not a continuance of the former lease so as to bring the case within the provisions of the statute giving a right of redemption in the case of leases for over fifteen years.                          pp. 257, 258

*Decided June 21st, 1924.*

Appeal from the Circuit Court of Baltimore City (STEIN, J.).

Special case stated as between Jacob Epstein and others, trustees, plaintiffs, and Israel Silberstein, defendant. From a decree for plaintiffs, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, BOND, and PARKE, JJ.

*Sidney L. Nyburg* and *Raphael Walter,* with whom was *Archibald Sykes* on the brief, for the appellant.

*Clarence A. Tucker* and *Joseph N. Ulman,* with whom were *Knapp, Ulman & Tucker* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The New Howard Hotel property in Baltimore is subject to a lease for a term of ten years ending February 28, 1926. The lease contains no provision for its renewal. It was executed on March 21st, 1916, but provided for a term of ten years beginning on February 29th, 1916, which was the day succeeding the date of the expiration of a preceding term created by a lease of the property dated April 24th, 1906. In the earlier lease there was a covenant that the lessee should "have the privilege of renewing" the lease "for another term of ten years," at a higher specified rental. The question to be decided on this appeal from a decree, on a special case stated, for the specific performance of a contract of sale, is whether the lessee of the hotel would have a right to acquire the fee simple title to the property by redemption under the terms of section 93 of article 21 of the Code, which provides:

"All rents reserved by leases or sub-leases of land hereafter made in this State for a longer period than fifteen years shall be redeemable at any time after expiration of five years from date of such leases or subleases, at the option of the tenant, after a notice of one month to the landlord, for a sum of money equal to the capitalization of the rent reserved at a rate not exceeding six per centum."

If the lessee could successfully claim the right to redeem under the statute, the title to the property is not such as the contract involved in the case describes.

As the existing lease is for a term less than fifteen years and does not provide for its renewal, it is not within the operation of the statute quoted unless the present term be regarded and treated as a continuation of the term which the preceding lease created.

The recognized object of the statute, originally enacted in 1884, was to stop the practice, which was believed to be harmful to the public interests, of leasing property under covenants for long initial and renewal terms without right of redemption. *Stewart* v. *Gorter,* 70 Md. 242; *Swan* v. *Kemp,* 97 Md. 686; *Brager* v. *Bigham,* 127 Md. 157. It was to accomplish such a preventive purpose that all leases thereafter made for longer periods than fifteen years were declared to be redeemable upon the terms prescribed. The policy of the law, in regard to such leases, has been modified by the Acts of 1914, chapter 371, and of 1922, chapter 384, enacting and amending section 87 of article 21 of the Code, which, in its present form, states that the redemption provisions of the article "were not intended to apply and do not apply to leases or sub-leases of property leased exclusively for business, commercial, manufacturing, mercantile or industrial purposes, as distinguished from residence purposes, where the term of such lease or sub-lease, including all renewals provided for therein, shall not exceed ninety-nine years." This section, however, could not affect the lessee's right of redemption in this case, if it would otherwise exist, because the enactment was subsequent to the execution of the original lease upon which the assertion of the right must depend. *Brager* v. *Bigham, supra.*

In *Stewart* v. *Gorter, supra,* a lease creating a term of fourteen years and providing for its renewal for a similar term and with the same covenants, thus contracting for its indefinite renewal, was regarded as an obvious attempt to evade the statute and was held to be within its scope and effect. The Court also held that the right to redeem could not be barred or qualified by agreement. In *Swan* v. *Kemp* and *Brager* v. *Bigham, supra,* it was decided that the statute applied to leases of ground improved with buildings as well

as to leases of unimproved land.  The lease in *Swan* v. *Kemp* was for a term of ninety-nine years, and the one considered in Brager v. *Bigham* created a twenty-year term.  In each instance the term in excess of the statutory limit of irredeemability was specified in a lease which was still in force. There was no question concerning the extension of the terms by renewal beyond the period mentioned in the statute.  In *Stewart* v. *Gorter,* such a question was presented, but the continuing provision for successive renewals was plainly a scheme by which the statute was sought to be evaded.  There are important differences between the present case and the three which we have cited.  In this case the lease now in force specifies a term less than the statutory period and contains no renewal covenant.  It is certain to terminate by its own limitations on February 28, 1926.  The absence of any design to circumvent the redemption law is, therefore, clearly demonstrated.  While the present lease was executed in recognition of the privilege to renew which was conferred upon the lessee by the original lease, there was no specific provision that the new lease should have the same covenants which the old lease contained, and in fact their stipulations were in certain respects materially different.  The new lease not only omitted the renewal covenant, but it added a clause which amplified a provision in the first lease in reference to the payment of a mortgage on the leased property.  Between the expiration of the old lease and the execution of the new one there was an interval of several weeks.  The parties evidently acted upon the theory that they were making a distinct contract for the ensuing period.  It was not in terms or apparent intent a mere continuance of the first agreement.

In the case of *King* v. *Kaiser,* 126 Md. 213, the principal question was whether a lease for five years which gave the lessee the option to renew it for a period of twenty years, at a higher rent, was in effect a lease for twenty-five years and, therefore, within the purview of section 1 of article 21 of the Code, requiring that conveyances of estates beyond seven years in duration should be executed, acknowledged and

recorded as the Code provides. It was held that a renewal of: the lease in pursuance of the exercise of such a privilege would involve the execution of a new lease, and that the provision for the renewal would not itself operate as an extension of the original term. The principle of that decision was applied also in the recent case of *Sweeney* v. *Hagerstown Trust Company,* 144 Md. 612.

There has been a continuity of possession under the two leases considered in this case, but the contractual relations of the parties have not been identical during the two periods which the leases designate. The rights of the lessee during the present term must be ascertained from the separate and different agreement under which the property is now possessed. It is clear that no right of redemption can be predicated upon the existing lease since it does not exceed the statutory limitation. No effort to redeem would find support in the preceding lease because it has not survived, by any effective process of renewal, without change, the expiration of the specific term to which it was restricted. There is consequently no ground upon which the theory that the lessee may be entitled to procure the fee simple estate by redemption under the statute can be sustained. With this view the decree of the court below is in accord.

*Decree affirmed, with costs.*

Bond, J., filed a concurring opinion as follows:

The opinion prepared by Judge Urner seems to me to express perfectly the conclusion of all the judges, including myself, on the facts and on the principles of law which the majority of the judges accept as the basis of decision. But I think the case should be decided upon a different ground, one which has not been adopted by the majority of the Court. I am rather strongly of opinion that the question of the applicability of the redemption statutes to such a relation as that established under this lease needs to be reconsidered. And it seems to me that it would be well to state that view.

It is well known to all lawyers and to others in this State that the Act of 1884, chapter 485, together with the acts which amended it, was designed to put a stop to the creation of the irredeemable ground rents which for about a century had been a favored form of security in Baltimore City, but which had survived to become a detriment. And that was its only purpose. "The statute involved in these cases," this Court has said, "was passed because it was known that the system of irredeemable ground rents which had prevailed in Baltimore City became very injurious to the prosperity of the city and a sound public policy demanded that the right to redeem be given to holders of leasehold interests under such leases as the statute included." *Spear* v. *Baker,* 117 Md. 570, 573. And again, in *Safe Deposit Co.* v. *Marburg,* 110 Md. 411, 413, the Court said, "It is well known from cases in this Court and otherwise that the complex system of ground rents in this State often rendered titles unmerchantable, although in some instances the rents had not been collected for many years, and some of them were for such a nominal sum and were owned by so many persons, that it was difficult to obtain the reversions for anything like a reasonable amount as compared with the rent reserved." And see *Swan* v. *Kemp,* 97 Md. 686, 690.

The "ground rent" thus banned for the future was a perpetual charge put upon land by the device of a lease for ninety-nine years with a covenant for renewal forever. It was, as Judge Miller stated in *Banks* v. *Haskie,* 45 Md. 217, "to secure the prompt payment in perpetuity of the interest on a sum of money equivalent to the value of the property in fee, at the time the lease was made, and on the part of the lessee to acquire a perpetual interest in the leased premises, which would justify his making permanent improvements thereon, and enable him to avail himself of the value of the property thus enhanced, as well as of its increase in value arising from other causes." The originators of this device had contrived a permanent ownership of the land in the one in the position of lessee, coupled with a permanent charge or annuity in the one standing as fee simple owner or

reversioner.   On both sides were to be permanent owners, one of the land and the other of the charge.   All enjoyment of the land belonged to the one entitled lessee, all increases in value were his increases, all losses were his losses; the one entitled reversioner or lessor had an interest only in a fixed, unchanging money charge.   And it seems to have been no other than the land charge, or charges upon land in the own-ership of another, which developed in many jurisdictions, and under several legal systems, and which, while it was carried along under the old forms and categories of lease or sale, belonged in reality to a relation distinct from that regularly established by either of these.   Here it was em-bodied in a form which with all its details seems to have been made use of only in this State, and in England and Ireland.   (*Banks* v. *Haskie,* 45 Md. 218); but in respect to its real character it had parallels in the ground rent which in Pennsylvania was charged upon fee simple estates, and which was made redeemable by an Act of 1850 (*Cadwalader, Ground Rents,* page 297), in the "ground annual" of the Scotch law, and in the land charges of Continental Europe. *Huebner, History of Germanic Private Law,* 356 to 368; *Brissaud, History of French Private Law,* sec. 389.   And it was similar to the rent charged under the perpetual lease, or emphyteusis, of the Roman law, which after long debate was officially declared to be neither a hiring of land on the one hand nor a sale on the other, but an arrangement of its own kind.   *Inst. Just.* 3, 24, 3; *Sohm, Institutes of Roman Law* (3rd ed., Ledlie), 348 to 350; 2 *Moyle, Institutes* (3rd ed.), Excursus II, 328; 2 *Sherman, Roman Law in the Modern World* (2nd ed.), 602 to 608; *Cadwalader, Ground Rents,* page 102, note.

The statute enacted here to stop the creation of these rents was broad in terms.   As now printed in article 53, sec-tion 24 of the Code, the provision is that "all leases or sub-leases of land made in this State * * * shall be redeemable at the option of the tenant * * * for a sum of money equal to the capitalization of the rent reserved" at a rate specified in the statute.   But the object sought was clearly defined and

restricted in the general understanding. For a long time it never entered anybody's mind that anything but the familiar ground rent lease would be affected, or that the statute would allow the redemption of any charge but a ground rent. No one seems ever to have found a lease for the occupancy of premises under the ordinary relation of landlord and tenant made to conform to the operation of the redemption statute, and no one would expect to. Business premises were let for long terms before 1884, although not so frequently as in later years. Other property rights within the legal classification of "land" were leased on long terms, piers for example. After that time, with the growth of business the need increased for the settled conditions which long leases would secure, and the number of long terms became greater. Short leases for many large business establishments became undesirable. Then a question of the full effect of the letter of the ground rent redemption statute arose. There was some reason for apprehension from a provision so broadly worded; and by the Act of 1914, chapter 371, the Legislature with some limitations excepted future leases of buildings from the operation of the older statute. In 1915, the decision in the case of *Brager* v. *Bigham,* 127 Md. 148, applied the ground rent statute to leases for the occupancy of business premises under the ordinary landlord and tenant arrangement, made prior to 1914. The Court took the view that the letter of the statute permitted no distinction between the leases which created ground rents and leases for the occupancy of premises as described, and expressed a fear that such a distinction, if allowed, would inevitably lead to abuses and evasions of the ground rent statute. The case of *Swan* v. *Kemp, supra,* while it had to do with an improved lot of ground as distinguished from the vacant land on which ground rents were more commonly established, still had to do only with the ordinary ground rent, and *Brager* v. *Bigham, supra,* seems to have been the first case—and up to this time the only case—to extend the application of the redemption statutes beyond ground rents.

Since that decision was rendered we have had time and

occasion to test it by its effects. It has been made abundantly clear that when it was decided in 1915 that the redemption statute included the ordinary business leases in its operation, many lessors of property were caught unawares and placed in a much embarrassed situation. Entirely unexpected by them, their properties were found tied up under agreements unadapted to any plan of redemption on the basis of rent solely. And by the same stroke tenants found themselves suddenly possessed of power to throw overboard any one or all of a great variety of other covenants which have been, and always will be, necessary in adjusting the demands which arise in the letting of one property and another in the ordinary course of business. In one instance, a tenant sought by redeeming on the basis of the rent fixed in his lease at the outset to put aside a covenant which required him to pay in addition to that rent all increases in taxes and insurance premiums, which amounted in the end to $9,555.69 yearly. In the case of *Brager* v. *Bigham, supra,* the tenant had covenanted, as part of the consideration proceeding from him (and doubtless it had its effect on the amount of rental agreed upon), to erect a new building on the lot or to pay the lessors $10,000; and that obligation was thrown off by redemption on the basis of the amount specified as rent. And other tenants have suddenly found themselves possessed of power to acquire the fee in each of their properties at prices which while about equal to the value many years back were now far below it. Tenants of one property which had grown in value to over $100,000 claimed a right to take it over at $35,000 by redeeming on the basis of the rent in an old lease. Other unjust results can easily be imagined, and some will doubtless be shown in other suits before all the leases which originated prior to 1914 have come to an end. It may well be found that in some leases far the greater part of the consideration moving to the lessors has consisted in something other than rent. The leases we are considering are of a nature to make that arrangement appropriate and likely. The lease involved in the case of *Feldmeyer* v. *Werntz,* 119 Md. 285, which was for a term of twenty years with a cove-

nant for renewal for another period of twenty years or sale at a price to be fixed, provided for no rent at all; the considerations moving to the lessors were all of another kind. It has been made clear enough that the ground rent redemption statute does not fit these leases, and that no just resolution of the relation of the landlords and tenants is possible under it. With only the redemption of the ground rent in mind, the framers of the act of 1884 and its amendments were confronted with a simple problem. The whole interest of the owner of the rent, the landlord of that relation, was summed up in that rent, and redemption of it upon a fair capitalization closed accounts between the two sides completely and fairly. But in the other relation the landlord is the real owner of the land; and he is the man upon whose ownership the ground rent, if there is any, is charged. In the exploitation of his property he must from time to time covenant for a variety of considerations entirely beyond the concern of a mere ground rent owner. That is necessary for both the landlord and the tenant, the law protects them in their covenants, and it would clog the renting of premises with hardship to both tenants and landlords if they should be denied freedom to adopt any covenants they might find desirable in their business arrangements. With the redemption statute construed to empower the tenant in this relation to redeem on the basis of whatever might be fixed as the rent, however, the parties, if they wish to make a lease for a long term, are denied freedom to embody beneficial, balancing covenants in any other form, or the tenant is given the right to expunge them. That is the practical result, with relation to leases made prior to 1914, at least.

It seems clear, then, that in adhering to the conclusion of *Brager* v. *Bingham,* we are making an application of the redemption statute which is contrary to the purpose of the Legislature in enacting it, and which makes it accomplish hardship and inconvenience not dreamt of. Is this unavoidable? In the first place, is the court compelled so to interpret the words of the statute as to attach this consequence to it?

Of course, ever since courts have been engaged in the work of applying statutes to concrete cases, it has been recognized that their function must be a much greater one than that of checking words with facts. Statutes are drafted by men, and therefore with a limited power of anticipation, and a limited power of expression. And one of the obvious guiding rules for the courts in interpreting a law is that the judges must fall in with the known purpose of the Legislature. This principle had, perhaps, more frequent application in older cases, when broad, general statutes were more common, but it is, of course, just as valid and effective in appropriate cases today. "All words," said Lord Bacon, "whether they be in deeds or statutes, or otherwise, if they be general, and not express or precise, shall be restrained unto the fitness of the matter or person." and in *Canal Co.* v. *Railroad Co.*, 4 G. & J. 152, Buchanan, C. J., said: "Statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them, as best to answer that intention, which may be collected from the cause or necessity of making the act, or from foreign circumstances; and when discovered, ought to be followed, although such construction may seem to be contrary to the letter of the statute. * * * That, therefore, which is within the letter of a statute, is sometimes not within the statute, not being within the intention of the makers." *Baltimore* v. *Root*, 8 Md. 95, 105; *Commercial Assoc.* v. *Mackenzie*, 85 Md. 132, 137; *Mitchell* v. *State*, 115 Md. 360, 365. The principle is illustrated in practice by the working out of several of the most familiar statutes. The law built up on the Statute of Frauds is an instance. Lord Mansfield said of it (*Bates* v. *Babcock,* 3 Burr. 1921): "The object of the legislature was a wise one; and what the legislature meant is the rule both at law and equity. * * * The key to the construction of the act is intent of the legislature; and therefore many cases, though seemingly within the letter, have been let out of it." Perhaps the development of the Sherman Anti-Trust Act may serve as another illustration. In the opinion in *Commercial Association* v. *Mackenzie, supra,* Judge Bryan

of this Court used several apt illustrations; a decision that a
statute for the punishment of anyone who "drew blood
upon the streets" did not apply to the letting of blood by a
surgeon to relieve one suffering from a fit; and another that
a law which awarded the ship and lading to those who stayed
aboard during a storm did not apply to a case in which one
man stayed, but did so only because he was too sick to escape.
So, in the interpretation and concrete application of a statute
the function of the court varies according to the amount of
the combined task already performed by the Legislature it-
self.    Assuming there is a workable statute to begin with,
then the courts have to do more or less in accomplishing the
aim of the Legislature according as the Legislature has left
them more or less to do.    And with a succinct statutory pro-
vision for the redemption of "leases of land" upon the basis
of "rents reserved," the courts have a statute in which the
Legislature has not undertaken to provide some qualifications
and distinctions necessary to keep it within its purpose on the
one hand, and to prevent evasions on the other hand by
avoidance of the strict letter.    Inevitably there arose soon
after its enactment a case outside the strict letter, but which
seemed to accomplish the mischief aimed at, and this Court
was called upon to uphold the purpose against evasion by
avoidance of the letter.    *Stewart* v. *Gorter,* 70 Md. 242.
And cases arose which were within its letter but outside the
purpose, and the task of the Court was then to protect from
the letter.    *Walker* v. *Washington Grove Assoc.,* 127 Md.
564; *Buckler* v. *Safe Deposit Co.,* 115 Md. 228.    In these
cases concerning leases of premises in the ordinary relation
of landlord and tenant the courts are again dealing, not with
ground rents, not with the system of ground rents which had
become an economic detriment and which the Legislature
was undertaking to stop, but with a relation which the Legis-
lature did not have in mind and for interference in which
it made no provision.    And in applying the statute to this
latter relation, we are not carrying out the purpose of the
Legislature but adding to their statute something they had
no thought of including, in order to safeguard their purpose.

We see the injustices which are resulting. Cases in which the results are even more regrettable may come before the courts in future, until the leases made before 1914 have all run their full courses. We cannot forsee the particular difficulties which they will oppose to the carrying out of the interpretation adopted in *Brager* v. *Bigham.*

It has seemed to me that this situation requires that *Brager* v. *Bingham* be overruled, and that the decree in the present case be affirmed on the ground that the redemption statute does not apply to the lease involved; and I have ventured to urge this course upon the Court. That is a method of correction which is ready at the Court's command, and however rarely it is used (and of course its use should be rare) situations must occur in which the best service is to be rendered by it. *Stimmell* v. *Underwood,* 3 G. & J. 289; and *Green* v. *Johnson,* 3 G. & J. 389; *Owens* v. *Sprigg,* 2 Md. 479; *Patterson* v. *Gelston,* 23 Md. 445; *Maus* v. *McKellip,* 38 Md. 236; *Terrall* v. *Burke Construction Co.,* 257 U. S. 529; *Klein* v. *Maravelas,* 219 N. Y. 283, 385, 386. It is a single decision (see the authorities collected in *Ram on Legal Judgment,* chap. XIV, sec. III, of *Departure from One Decision*); and it happens that from the outset the Act of 1914, chap, 371, deprived it for all practical purposes of that prospective effect upon which the rule of *stare decisis* chiefly depends. So correction by overruling it, if that decision is mistaken, seems to be to an unusual degree free from obstacles.

I venture to think it is the only way to the root of the difficulties which are being presented in these cases. Possibly the two statutes, the Act of 1914, chapter 371, and the Act of 1922, chapter 384, now in section 97 of article 21 of the Code, may by implication bring into the operation of the ground rent redemption statute some leases of the other nature, and, if this is true, the overruling of *Brager* v. *Bigham* may not confine these redemption statutes strictly to ground rents; but that is a question not involved in the present case.