## TRUSTEES OF SHEPPARD & ENOCH PRATT HOSPITAL *v.* SWIFT & COMPANY ET AL.

[No. 16, April Term, 1940.]

*Decided April 24th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, and DELAPLAINE, JJ.

*Frances A. Michel* and *J. Kemp Bartlett, Jr.,* for the appellants.

*Lee I. Hecht* and *Isaac Hecht,* for the appellees.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court of Baltimore City, directing the Trustees of the

Sheppard and Enoch Pratt Hospital, a body corporate (appellant), to execute and deliver to Swift & Company, a body corporate (appellee), an original lease for ninety-nine years, renewable forever, in accordance with a covenant contained in a sublease for ninety-eight years, renewable forever, upon a parcel of ground located at the northwest corner of Pratt and Howard Streets, in the City of Baltimore; the said decree further declaring that when executed and delivered in conformity therewith, such new lease shall be redeemable, after five years, in accordance with the provisions of sections 94 and 95 of article 21 of the Annotated Code of Maryland.

The entire parcel of ground above mentioned consists of two lots, which for the purposes of this opinion will be hereinafter designated as lot A and lot B, respectively. Lot B is located at the intersection of the two streets and fronts thirty feet and three inches on Pratt street, with a depth of sixty-seven feet and six inches on Howard Street; and lot A, lying to the west of Lot B and adjacent thereto, has a frontage of forty-four feet on Pratt Street and a depth of sixty-seven feet and six inches.

The following stipulations are found in the record: (a) That the ground is rectangular in formation with a frontage of seventy-four feet and three inches on Pratt Street, and a depth of sixty-seven feet and six inches on Howard Street, to the north side of a four foot alley, running in a westerly direction from Howard Street and parallel with Pratt Street; (b) that Moses Sheppard, at the time of the probate of his will in 1857, owned the leasehold interest in both of said lots; (c) that with respect to lot A, the leasehold interest was subject to the payment of an annual ground rent of eleven pounds sterling by virtue of an original ninety-nine year lease, renewable forever, and with respect to lot B, the leasehold interest was subject to an annual ground rent of one-half penny sterling by virtue of an original ninety-nine year lease, renewable forever; (d) that by his will, dated January 16th, 1855, and duly probated and recorded in the office of the Register of Wills of Baltimore City, Moses Sheppard be-

queathed his interest in both of said lots to the Trustees of the Sheppard Asylum, incorporated by Act of the Legislature of 1853, chapter 274; the name of said corporation being subsequently, by chapter 17 of the Acts of 1898, changed to the Trustees of the Sheppard and Enoch Pratt Hospital; and (e) that on July 9th, 1866, the Trustees of the Sheppard Asylum by sublease, duly executed and recorded, subleased both of the above lots as one parcel to Lewis Konze, his executors, administrators and assigns, for ninety-eight years, renewable forever, at an annual rental of four hundred and eighty dollars, payable in equal semi-annual installments.

It is shown that the above sublease contained the usual covenant as to the right of the lessor to re-enter and re-possess the premises upon the failure of the lessee to pay the rent; a covenant of the lessee to pay the same together with all taxes, assessments and public dues, and a covenant for the peaceable and quiet possession of the premises. In addition to the aforegoing, the said indenture contained the following alternative covenants on the part of the sublessor, in event the conditions of the sublease were fully complied with by the sublessee; the same to become effective at the option of the sublessee, that is to say: (1) That "at any time or times hereafter during the continuance of this present demise on the request and at the risk and charge of the (sublessee) upon paying or tendering in payment the sum of ten dollars as a fine therefor, (the sublessor) shall and will make and execute and deliver * * * a new lease of the above demised ground and premises for ninety-eight years to commence and take effect from and at the end of the term for which the same are above demised, subject to the same rent and under the like covenants, clauses and agreements as are herein mentioned so that this present demise may be renewable and renewed forever;" and (2) "That if (the sublessor) shall at any time hereafter acquire the fee simple of and in the ground and premises above described and hereby demised and subleased that then, the (fee simple owner) shall and will accept of a surrender of the

above demised premises from (the sublessee) and execute and deliver to (the sublessee) a new lease of the above demised premises for ninety-nine years, renewable forever, subject to the same rent of four hundred and eighty dollars reserved by these presents payable as aforesaid."

It is further conceded that subsequently, by deeds dated, respectively, February 5th, 1879, and June 13th, 1903, duly executed and recorded, the Trustees of the Sheppard Asylum, sublessor, acquired the reversion under the original lease as to that part of said entire lot of ground designated as lot A, and, accordingly, the appellant has, since the execution of said deeds, owned the same in fee. Furthermore the stipulation sets forth that on December 31st, 1881, the original lease upon that part of the entire lot of ground designated as lot B, was renewed for ninety-nine years by lease duly executed and recorded; and that no change in the record title of the appellant has since occurred, in so far as the latter parcel of ground is concerned, except that for more than twenty consecutive years the one-half penny sterling rent reserved under the original and renewal lease thereon has not been demanded and has not been paid.

Through mesne assignments the appellee, Swift & Company, on June 5th, 1905, acquired the subleasehold interests in the entire parcel of ground, as originally created by the sublease of July 9th, 1866, between the appellant and the said Lewis Konze. Swift & Company subsequently executed a mortgage upon its said leasehold interest to certain trustees named therein, who are also parties plaintiff in this suit. The bill of complaint, after alleging that the sublessor is now possessed of the reversion in both of the above designated lots, a demand as of October 14th, 1938, upon the sublessor by the sub-lessee for a new ninety-nine year lease renewable forever upon the entire parcel of ground at the annual rental of four hundred and eighty dollars, payable in equal semi-annual installments, and the refusal of the sublessor to comply with said demand, prays that the provision of the original sublease be specifically enforced, and that the

sublessor be directed to execute and deliver to the sublessee a new ninety-nine year lease embracing the terms and conditions set forth in said second alternative covenant.

Upon the aforegoing facts, it is submitted that by operation of law the appellant has acquired the reversion in the remaining part of said ground designated as lot B, because for more than twenty consecutive years the latter rental has not been demanded or paid. And the appellee, Swift & Company, relies upon section 27 of article 53 of Code of Public General Laws in support of the latter contention, which section provides as follows: "Whenever there has been no demand or payment for more than twenty consecutive years of any specific rent reserved out of a particular lot or any part of a particular lot under any form of lease, such rent shall be conclusively presumed to have been extinguished and the landlord shall not thereafter set up any claim thereto or to the reversion in the lot out of which it issued or have right to institute any suit, action or proceeding whatsoever to recover said rent on said lot, * * * provided, however, * * * that no retroactive effect shall be given * * * and the period of limitations herein prescribed shall begin to run only from April 8th, 1884."

As successor to all rights under the sublease of the original sublessess, the appellee, Swift & Company, has elected to exercise the second alternative covenant embraced therein, and upon the surrender of the premises, require the specific performance thereof; to wit, the execution and delivery to it of a new lease for ninety-nine years, renewable forever, subject to an annual ground rental of four hundred and eighty dollars; and because of statutes enacted in this state since the original sublease of July 9th, 1866, was executed, it becomes important to refer to the same for the purposes of this case. The first of said statutes is chapter 502 of the Acts of 1884, now codified as section 27 of article 53 of the Code, to which reference has above been made, and the second is chapter 207 of the Acts of 1900, now codified as

section 95 of article 21 of the Code, which provides as follows: "All rents reserved by leases or subleases of land hereinafter made in this state for a longer period than fifteen years shall be redeemable at any time after expiration of five years from the date such leases or subleases, at the option of the tenants, after a notice of one month to the landlord, for a sum of money equal to the capitalization of the rent reserved at a rate not exceeding six per centum."

It may be added that the latter legislation liberalizes redemptory provisions with reference to leases and subleases, as first enacted by chapter 485 of the 'Acts of 1884, and chapter 395 of the Acts of 1888, now codified as section 94 of article 21 of the Code.

In view of the aforegoing legislation it is urged by the appellant that it ought not now to be required to perform that which it covenanted by its sublease of July 9th, 1866, to perform, because at the time the sublease was created, leases were irredeemable in this state, whereas, at this time, a new ninety-nine year lease, for which the appellee contends in accordance with the second alternative covenant embodied in the original sublease, might be construed to be redeemable by virtue of the enactment of the legislation to which we have referred.

It is further contended by the appellant: (a) that the rights of the parties or their assigns to a lease or sublease must be interpreted in the light of the law as it existed at the time the sublease was made, it being conceded that in 1866 the title to the fee simple or reversionary estate could not then have been acquired by operation of law through the non-payment, for a period of more than twenty consecutive years, of the rent reserved in the original sublease; (b) that the appellee, subtenant, is prevented from specifically enforcing such rights as it may have had under the covenant of the sublease because of laches on its part; and, (c) that if, because of the covenant in the sublease, the appellant is required to execute a new lease, such new lease would spring out of the covenant embraced in the sublease of 1866, should not

be construed as a new and independent transaction, and would, therefore, not be affected by sections 94 and 95 of article 21 of the Code. These defenses will now be considered.

It will be recalled that, as to that part of the demised parcel of ground, designated as lot A, the appellant by its own act acquired the reversionary estate therein, and, although it did not, by actual grant or devise to it, acquire the reversion in lot B, the remaining part of the entire demised parcel, it is stipulated and admitted that the half penny rent reserved thereon has not been demanded or paid for over twenty consecutive years. While not a word of precise significance, the word "acquire" as used in the instant sublease, does not restrict the sublessor to the acquisition of the fee simple interest in the demised premises, to that of grant or devise. It may and does contemplate the gain or acquisition of the same in any other lawful manner. With respect to lot B, the record definitely shows that since prior to 1881, neither demand nor payment of the half penny annual rent thereon has been made; and that since June 13th, 1903, on which date the fee in the remaining lot was fully acquired by it, the appellant has held absolute and exclusive control and dominion over the property. No matter how acquired, an interest in land, having those incidents, is an estate in fee simple. *Tiffany on Real Property,* sec. 20; *Arnd v. Lerch,* 162 Md. 318, 159 A. 587.

In *Safe Deposit Co. v. Marburg,* 110 Md. 410, 72 A. 839, 841, this court, speaking through the late Chief Judge Boyd, said: "Although the law will not ordinarily permit a tenant in possession to dispute his landlord's title, circumstances may arise and conditions exist, which require a change of the common law rule, and such was doubtless the opinion of the Legislature when it passed the act of 1884. When it did pass a law which prescribed the character of evidence which would be sufficient to show an adverse holding by a tenant, when such evidence is produced there can be no reason why such adverse holding of the tenant should not be given the same effect

as is given to other adverse possessions. The effect of adverse possession is thus stated in 1 *Am. & Eng. Encyc. of Law,* 883: 'By adverse possession of land for the statutory period of limitation the adverse holder acquires a title in fee simple, which is as perfect as a title by deed. Its legal effect is, not only to bar the remedy of the owner of the paper title, but to divest his estate, and vest it in the party holding adversely for the required period of time, so that he may maintain an action of ejectment for the recovery of the land even as against the holder of such paper title who has ousted him.' * * * So, without pursuing that question further, there can be no doubt that the running of the statute may not only affect the remedy of the holder of the paper title, but may extinguish his title, vest title in fee in the adverse holder; and the constitutionality of statutes having such result is no longer an open question. The effect of the act of 1884 is to vest the title of the former landlord in the tenant when it is shown that no rent has been demanded or paid for the statutory period, and, when that is done, the tenant's rights are similar to those vested in one holding by adverse possession under the statute of James I." See *Regents v. Trustees of Calvary Church,* 104 Md. 635, 65 A. 398; *Lewis v. Kinnaird,* 104 Md. 653, 65 A. 365; *Silberstein v. Epstein,* 146 Md. 254, 126 A. 74; *Hamburger v. Finkel,* 148 Md. 275, 129 A. 289; *Rosenthal v. Traub,* 155 Md. 167, 141 A. 558; *Arnd v. Lerch, supra.*

The conclusion, therefore, is inevitable, that by virtue of its acquirement of the full reversionary interest in lot A of the demised premises, by the deeds to it under dates of February 5th, 1879, and June 13th, 1903, respectively, and by operation of law resulting from the passage of chapter 502 of the Acts of 1884, Code, art. 53, sec. 27, the appellant has been the owner of the fee simple interest in the entire parcel of ground, as embraced in its original sublease to Lewis Konze under date of July 9th, 1866, since June 13th, 1903.

Notwithstanding the current status of its title, however, the appellant submits that it should not be required to specifically perform the covenant now under consideration, upon the theory that a new lease for ninety-nine years, renewable forever, or a lease for a longer period than fifteen years now executed in this State, will automatically become subject to the provisions of sections 94 and 95 of article 21 of the Code. In other words, it is suggested that, if specific performance is granted as prayed, under the existing state of the law, the appellee, Swift & Company, may after the lapse of five years redeem the proposed new lease and terminate its tenancy. Moreover, it is submitted that such redemption, in effect, would enure to the financial benefit of the appellee, and correspondingly result in financial loss to the appellant; and contravene the constitutional provision against the impairment of the obligations of a contract.

It should be borne in mind that none of the legislation, designed to prohibit the creation of irredeemable leases or subleases in this state, in any manner affected the irredeemable provisions of leases or subleases in existence at the time of the passage of chapter 485 of the Acts of 1884; which, as has been seen, was the first of the successive measures enacted to that end. The indicated legislation was prospective and not retrospective in its character and effect. It did not prohibit the execution of subsequent leases or subleases for a longer period than fifteen years, but what it did was to subject them to the redemption provisions indicated in the respective acts, in the discretion of the lessee. It may be added that leases for less than fifteen years mean leases without a covenant for renewal, and which are intended by the parties to the contract to end at the expiration of fifteen years or a less period of time. *Stewart v. Gorter*, 70 Md. 242, 243, 16 A. 644.

Primarily, the inquiry in the instant case is whether the appellant may be decreed to specifically perform that which it obviously covenanted to perform, and in the light of the facts before us, with due consideration of the

law as it now obtains, we have no hesitancy in holding that a decree for the specific performance of the covenant embodied in the sublease of 1866, as prayed in the bill of complaint, should be granted.

Specifically that is the only relief prayed. And were it not for the fact that the decree before us goes further and anticipates what may or may not happen, namely, a request by the appellee to redeem such new lease after the expiration of the period of five years, it would be unnecessary to prolong this opinion.

However, in view of a provision, in the decree of the learned chancellor who heard the case below, to the effect that the new lease when executed will be subject to redemption under the provisions of sections 94 and 95 of article 21, we have decided to indicate our views upon that phase of the decree, because in this latter respect we are not in accord with the chancellor's views.

In the early case of *Flook v. Hunting,* 76 Md. 178, 24 A. 670, a lease executed in March, 1864, for a term of ninety-nine years, renewable forever, contained a covenant that the lessor, his heirs and assigns, at such time when the lot of ground described in the lease should be improved by the lessee, his executors, administrators and assigns, by the erection thereon of dwelling houses of specified dimensions, the lessor would, at the request and proper cost of the lessee, execute and deliver to the lessee a separate lease for each house so built, with its lot of ground; thereby so apportioning and dividing the entire rent reserved that each lot into which the whole should be so sub-divided should be liable and bound solely for its own rent, which should be a fair proportion of the whole. It was there contended that new leases upon the separate lots, executed and delivered after the passage of chapter 395 of the Acts of 1888, in accordance with the above covenant in the original lease, executed prior to the passage of the act, were redeemable upon request of the lessee. The lower court so held. But this court, in reversing that ruling, said: "As the original lease was made long prior to the act of 1888, it cannot be affected

by any of its provisions. This lease very distinctly created an irredeemable ground rent of $700 a year. A redeemable rent, of course, would be of much less value. * * * Nothing is said about changing the character of the rent so as to make it redeemable, and therefore less valuable. * * * These separate leases are to be considered in connection with the covenant in the original lease, authorizing and requiring them to be made. By virtue of this covenant, they spring out of the original lease, and are virtually separate portions into which it is required to be divided. They cannot be considered as new and independent transactions, originating at the time they are to be executed. * * * These renewals will be founded on the considerations which sustain the first lease, and are really but continuations of it. They derive their existence from it, and, unless the obligation of a contract may be violated, they must continue to be made, with all the covenants of the first lease embodied in them." *Maulsby v. Page,* 105 Md. 24, 65 A. 818.

We are not unmindful that, in the above case, the covenant enforced grew out of an original lease as distinguished from a sublease, as in the instant case, and that a new lease under the covenant now under consideration will possess the characteristics of an original lease between an original lessor and an original lessee, instead of a renewal of a sublease between a sublessor and a sublessee. But when it is recalled that at the time the sublease before us was executed the right of redemption in a lessee as against a lessor, in the absence of a contract to that effect, was not available to the lessee, the latter's right of redemption against the landlord was no stronger than that of a sublessee, as against a sublessor.

The appellee, Swift & Company, in the instant case, has exercised an option embodied in the form of a covenant in a sublease. To that extent, at least, it must base its right to a new lease upon the sublease under which it now holds the leasehold interest in the demised premises. Its claim to a new lease must, and does, spring from the covenant in the sublease under which it asserts that claim,

and the new lease to which it is entitled should give effect to the intention of the parties to the contract upon which it relies. 12 *Am. Jur.* secs. 226 and 227; 8 *R. C. L.* pp. 1037, 1038 and 1046; *Weinbeck v. Dahms,* 134 Md. 464, 107 A. 12.

Our conclusion, therefore, is that the chancellor erred in directing that the new lease decreed to be executed be redeemable. To the contrary, the new lease, in conformity with the provisions of the sublease by virtue of which it will be executed, for the reasons stated will be irredeemable.

It may be stated that we have not considered the effect which the question of laches may have had on the instant case, if the same had not been decided on other grounds.

> *Decree affirmed in part and reversed in part, and cause remanded, to the end that a decree may be passed in accordance with the opinion of this court, with costs to the appellant.*